Lauren BEVERS, Appellant,

v.

Ronald B. SOULE, Appellee.

No. 2–94–160–CV.

Court of Appeals of Texas,
Fort Worth.

Oct. 19, 1995.

**600**

John J. Drake, Shannon, Gracey, Ratliff & Miller, LLP, Fort Worth, for appellant.

Leland A. Reinhard, Catterton & Reinhard, Fort Worth, for appellee.

Before DAY, DAUPHINOT and RICHARDS, JJ.

## OPINION

RICHARDS, Justice.

This appeal is from a personal injury case involving an automobile accident. Appellant Lauren Bevers ("Bevers") was the defendant in the trial court. Appellee Ronald Soule ("Soule"), plaintiff in the court below, alleged he suffered physical injuries caused by Bevers' negligence when her vehicle struck his vehicle in a rear-end collision. Trial was to a jury, which awarded Soule $187,500.00.

Bevers presents three points of error on appeal. In point of error one, she complains there was no evidence, or, in the alternative, insufficient evidence to support the jury's finding the accident was the proximate cause of Soule's injuries. In point of error two, she contends the trial court erred in ordering that prejudgment interest accrue on the date Soule first contacted her, rather than on the date suit was filed. In her third point of error, Bevers contends the trial court erred in ordering that prejudgment interest be compounded annually rather than as simple interest.

We affirm in part and reform in part.

The sufficiency challenge presented in Bevers' initial point of error requires review of the circumstances of the collision and the testimony relating to Soule's physical injuries.

On the morning of August 21, 1990, Soule was traveling to work in his American Motor Company Concord on Interstate Highway 35 near downtown Fort Worth. Because of heavy rush-hour traffic, he slowed down and ultimately came to a complete stop due to bumper-to-bumper congestion. When he looked into his rear-view mirror, Soule saw a Chevrolet Camaro approaching from behind at a speed suggesting the driver did not intend to stop. Soule initially estimated the speed of the Camaro at forty to fifty m.p.h., but later testified it may have been moving "something less than that." Because he expected the collision would throw his body forward, Soule braced himself for the impact. The Camaro, driven by Bevers, struck

Soule's car with enough force to cause his vehicle to strike the car previously stopped six feet in front of him. The force of the rear-end collision, contrary to Soule's initial expectation, forced his body back into the seat. He was then thrown forward by the secondary collision with the third car, but was partially restrained by his seat belt.

It appeared the collision caused only moderate damage to Soule's Concord; however, after Soule's wife told him that the rear end of the car did not appear to be properly following its front end, it was discovered that the impact had damaged the U–Bolt, which had to be replaced.

Initially, Soule did not believe he had been injured. Following the accident, he drove his wrecked vehicle through still-heavy traffic approximately four miles to his office. At about the time he arrived at his office, he began experiencing pain in his right calf and foot. Thinking the pain might go away, Soule continued to work; however, instead of improving, the pain in his right leg grew progressively worse. Later in the day, Soule felt a "kind of tightness" in his back that was not initially painful. Soule treated the tightness with Tylenol and made an appointment with the Northeast Medical Clinic, where his family doctor of fifteen years, Dr. David Law, was associated. Because Dr. Law's schedule would not have permitted Soule to see him for a week, Soule made an appointment with another associate, Dr. Tyson, for August 24, 1990.

Dr. Tyson ordered a series of x-rays and prescribed anti-inflammation and pain medication. Six days later Soule saw Dr. Law, who continued with the same medical treatment on an approximately once-a-month basis for three months. Thereafter, Dr. Law referred Soule to Dr. Juan Capello, an orthopedic surgeon.

Dr. Capello prescribed medications and suggested a four-month course of physical therapy; however, Soule continued having pain in his lower back and right leg. According to Soule, Dr. Capello did not believe there would be any further improvement and suggested that he simply learn to "live with" his injury. When the pain seemed to grow worse, Soule saw another orthopedic surgeon, Dr. Myron Glickfeld, who diagnosed the injury as a herniated disc which required surgery. Soule testified that he did not initially agree to surgery because a high school friend had become paralyzed from the chest down as a result of nerve damage. Because of his fear of nerve damage, Soule tried to control the pain with medications for the next eight months. When the pain got worse, Soule relented and was operated on by Dr. Glickfeld on August 19, 1992. Soule testified the surgery helped, but did not completely eliminate the pain.

Soule testified the only prior back symptoms he had ever experienced were two muscle pulls which occurred over two years prior to the auto accident. One was a muscle pull in the area of his abdomen from stretching and the other was "minor" pull in the back immediately behind the abdomen injury. He took medication for two weeks and never had another symptom from either injury since that time. Soule also testified that in July of 1989, he had applied for a job with American Airlines and had undergone a complete physical that included range of motion tests to diagnose any spine problems. No back problems were found and the airline's doctor found Soule's skeletal system to be "normal."

■ In determining a "no evidence" point, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 221 (Tex.1992); *Orozco v. Sander,* 824 S.W.2d 555, 556 (Tex. 1992); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). If there is more than a scintilla of such evidence to support the finding, the claim is sufficient as a matter of law, and any challenges go merely to the weight to be accorded the evidence. *Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 928 (Tex.1993).

■ A "no evidence" point of error may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to

prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Juliette Fowler Homes, Inc. v. Welch Assoc., Inc.,* 793 S.W.2d 660, 666 n. 9 (Tex. 1990); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEX.L.REV. 361 (1960). There is some evidence when the proof supplies a reasonable basis on which reasonable minds may reach different conclusions about the existence of the vital fact. *Orozco,* 824 S.W.2d at 556.

■ An assertion that the evidence is "insufficient" to support a fact finding can mean that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the finding should be set aside and a new trial ordered. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). We are required to consider all of the evidence in the case in making this determination and, if reversing, to detail that evidence in the opinion. *Jaffe Aircraft Corp. v. Carr,* 867 S.W.2d 27, 29 (Tex.1993).

■ We find the evidence to be legally sufficient to support the jury's determination that the automobile accident was the proximate cause of Soule's injuries. Moreover, we are convinced the jury's finding concerning the issue of causation, in light of the entire record, should not be overturned for factual insufficiency.

Bevers suggests three reasons why we should find the evidence factually insufficient: (1) the only evidence of causation was Dr. Glickfeld's opinion, which was based on the incorrect assumption that appellant's vehicle was traveling approximately fifty m.p.h. when she struck Soule; (2) her own expert, Dr. Charles Hatsell, testified that Bevers was traveling only fourteen to sixteen m.p.h. when she struck Soule, causing a "very minor" accident that could not have caused Soule's herniated disc; and (3) several other factors could have caused Soule's injuries: a previous fall from a ladder, an injury where a piano fell on him, and a jump from a high location.

Our review of the record shows each of Bevers' concerns involved contested issues

presumably weighed by the jurors during their deliberations. For example, Soule's testimony at trial established a rational explanation why these prior injuries could not have contributed to his herniated disc. Soule testified the piano injury occurred when a piano fell on him while being moved and that the injury was not to his back. Similarly, Soule explained his fall from the ladder caused only a leg and head injury. The final incident involved a muscle in his abdomen and a muscle in his lower back, injuries that were fully healed two years prior to the automobile accident. Bevers' theory that the proximate cause of the herniated disc was not the auto accident was also rebutted by evidence that a complete physical conducted by American Airlines shortly before the automobile accident revealed no damage to Soule's skeletal system.

Dr. Hatsell's opinion that Bevers' vehicle was traveling at a speed of only fourteen to sixteen m.p.h. was also contested. Bevers herself estimated her car was traveling between twenty-five and thirty m.p.h. at the time she saw Soule's car approximately one car length ahead. What Dr. Hatsell surmised was a "very minor collision" Bevers recalled as being "fairly hard." Moreover, Dr. Hatsell's conclusion as to the speed of Bevers' vehicle did not take into account the broken U–Bolt on Soule's Concord. Hatsell's estimate of the speed of Bevers' car was based on his review of photographs provided by Bevers' attorney and initial body shop estimates of the property damage. Dr. Hatsell never examined Soule and never saw the damage to Soule's U–Bolt. Moreover, Soule's expert, Dr. Glickfeld, did not testify that Soule's injuries could have only been caused by a fifty m.p.h. collision.

Based on the above testimony, the medical records, and Soule's lay witness testimony that provided a logically traceable connection between the accident and his herniated disc, we cannot conclude the evidence was either legally or factually insufficient to support the jury's determination the auto accident was the proximate cause of Soule's injury. The overall impression left upon review of the entire record is that both sides were represented at trial by skilled and well-prepared

counsel who provided the jury with sufficient evidence to justify special issue answers favoring either party.

Point of error one is overruled.

In her second point of error, Bevers contends the trial court erred in ordering that prejudgment interest begin on April 28, 1991, the 180th day following Soule's return of a signed medical authorization form and claim letter to Bevers' insurance carrier, rather than on the date Soule filed suit.

Texas law allows for the accrual of prejudgment interest in personal injury cases as follows:

> [P]rejudgment interest accrues on the amount of the judgment during the period beginning on the 180th day after the date the defendant receives notice of the claim or on the day suit is filed, whichever occurs first, and ending on the date preceding the date judgment is entered.

TEX.REV.CIV.STAT.ANN. art. 5069–1.05, § 6(a) (Vernon Supp.1995).

Bevers asks us to interpret "notice of claim" so as to require notice of the amount of damages sought as well as notice of the nature of the complaint. Bevers notes that Soule's earliest written correspondence with her insurance carrier was an October 30, 1990 letter written by Soule to Don Young, a claim specialist at State Farm Mutual Insurance Company. In pertinent part, the letter stated:

> Re: Claim No.: 43–7080–020
>
> Insured: Roy D. Bevers
>
> De[a]r Mr. Young:
>
> I enclose for your files one (1) signed copy of the "Authorization" you sent me so that you could obtain the necessary information to properly consider my injury claim.
>
> I also enclose for your processing copies of some of the medical receipts relative to my injury. As you will note, I am now seeing an orthopedist, Juan J. Capello, M.D. I am about to start a program of physical therapy.
>
> Should you require any additional information, please let me know. My office number is [number listed].

Sincerely,

/s/ Ronald B. Soule

■ Under Bevers' view, because the letter did not state the nature of the complaint or the amount of damages sought, the earliest date prejudgment interest could have been ordered to run was the date Soule filed suit. Bevers correctly notes that the notice provisions of the Texas Deceptive Trade Practice Act require a potential plaintiff to first identify the nature of the complaint and the amount required to compensate him for his damages. TEX.BUS. & COMM.CODE ANN. § 17.505(a) (Vernon Supp.1995).

■ In response, Soule notes his cause of action was not brought under the Deceptive Trade Practices Act, and suggests Bevers' complaint would be better addressed to the legislature. We agree. Nothing in article 5069–1.05 requires the claimant to demand an exact amount or list every element of damage claimed in order to trigger the notice of claim provision. *See Robinson v. Brice*, 894 S.W.2d 525, 528 (Tex.App.—Austin 1995, writ denied). Therefore, the trial court's determination that written notice of the claim was triggered by Soule's letter and the signed medical authorization form was not improper.

In her final point of error Bevers argues the trial court erred in ordering that prejudgment interest be compounded annually rather than as simple interest. Regarding prejudgment interest, Texas law provides that "the rate of pre-judgment interest shall be the same as the rate of post-judgment interest at the time of judgment *and shall be computed as simple interest*." TEX.REV.CIV. STAT.ANN. art. 5069–1.05, § 6(g) (Vernon Supp.1995) (emphasis added).

■ In providing that judgments in wrongful deaths, personal injury, property damage, and condemnation cases be computed only as simple interest, the legislature has specially mandated that prejudgment interest in these types of cases must be computed as simple interest. *Enterprise–Laredo Assoc. v. Hachars Inc.*, 839 S.W.2d 822, 839 (Tex.App.—San Antonio 1992, writ denied); *see also Transport Ins. Co. v. Faircloth*, 861 S.W.2d 926, 941–42 (Tex.App.—Beaumont

**604**

1993) (prejudgment interest in personal injury claim should have been calculated as simple interest under the statute, rather than ordered compounded annually), *rev'd on other grounds*, 898 S.W.2d 269 (Tex.1995).

The trial court's written judgment in the instant case, in part, provided that the prejudgment interest be compounded annually:

> Prejudgment interest on [Soule's] damages of $187,500.00 at the rate of 10% per annum, compounded annually, from April 28, 1991 to the date this judgment is signed in the amount of $58,955.40.

Soule urges us to uphold the trial court's judgment, based on the following language from the Texarkana Court of Appeals:

> The current version of Article 5069–1.05, § 6(g) provides that "[t]he rate of prejudgment interest shall be the same as the rate of postjudgment interest at the time of judgment and shall be computed as simple interest." TEX.REV.CIV.STAT.ANN. art. 5069–1.05, § 6(g) (Vernon Supp.1991). Section 3(a) provides that "judgments earn interest for the period beginning on the day the judgment is rendered and ending on the day the judgment is satisfied. Interest shall be compounded *annually*" (emphasis added).

*Sadler v. Duvall*, 815 S.W.2d 285, 294 (Tex. App.—Texarkana 1991, writ denied).

The *Sadler* court went on to reform the trial court's judgment "so that prejudgment interest is compounded annually as provided under the statute." *Id.*

We believe the *Sadler* holding is based on a misinterpretation of the statute. The reference to annual compounding in section 3(a) concerns *postjudgment* compounding, *i.e.,* the annual compounding of interest for the period beginning on the day the judgment is rendered and ending the day the judgment is satisfied. Prejudgment interest, on the other hand, is governed by section 6(g) of the same article. It provides that prejudgment interest be computed as simple interest at the same percentage rate as postjudgment interest.

 Therefore, a proper judgment in favor of a successful litigant in a personal injury cause of action should reflect two calculations: (1) prejudgment interest on plaintiff's damages at the applicable interest rate, computed as simple interest; and (2) postjudgment interest on the total sum at the applicable interest rate, compounded annually, beginning the date judgment is signed until the judgment is satisfied. TEX.REV.CIV. STAT.ANN. art. 5069–1.05, §§ 3(a), 6(g) (Vernon Supp.1995).

The judgment is reformed to reflect that prejudgment interest is reduced from $58,955.40 to $55,890.41. Thus, the judgment is further reformed so postjudgment interest is calculated on the total sum of $243,390.41 ($187,500.00 damages + $55,890.41 prejudgment interest), from March 5, 1994, the date judgment was signed, until such day the judgment is satisfied.

As reformed, the judgment is affirmed.