NATIONAL FREIGHT,
INC., Appellant,

v.

John SNYDER, Appellee.

No. 11–04–00199–CV.

Court of Appeals of Texas,
Eastland.

April 6, 2006.

Adam B. Reed, David L. Sargent, Charles George Orr, Katherine K. Elrich, Hermes Sargent Bates, L.L.P., Dallas, for appellant.

William M. Hayner, William M. Hayner, Jr., William M. Hayner & Associates, Georganna L. Simpson, Law Office of Georganna L. Simpson, Dallas, for appellee.

Panel consists of WRIGHT, C.J., and McCALL, J., and STRANGE, J.

## OPINION

TERRY McCALL, Justice.

This appeal arises from a motor vehicle accident. A vehicle driven by John Snyder collided with a tractor-trailer owned by

National Freight, Inc. when the tractor-trailer entered a highway in the path of Snyder's vehicle. Snyder suffered a fractured left wrist in the accident. Snyder filed suit against National Freight and the driver of the truck. At trial, National Freight admitted its driver's liability for causing the accident. Accordingly, the only questions submitted to the jury were Snyder's damages as a result of the accident. The jury awarded Snyder damages in the amount of $250,000. Based upon the jury's verdict, the trial court entered judgment in favor of Snyder in the amount of $279,142.64 plus court costs and post-judgment interest. National Freight raises eight issues on appeal challenging the trial court's judgment. We affirm in part and reverse and remand in part.

### Improper Jury Argument

■ In Issue No. 1, National Freight contends that Snyder's counsel made an improper argument to the jury. On several instances during closing argument, Snyder's counsel asked the jury to "send a message" to National Freight by awarding Snyder substantial damages to encourage the safe operation of National Freight's trucks in Taylor County. National Freight asserts that this argument was improper because Snyder did not seek the recovery of exemplary damages.

■ To obtain reversal of a judgment on the basis of improper jury argument, National Freight must prove: (1) an error; (2) that was not invited or provoked; (3) that was preserved at trial by a proper objection, motion to instruct, or motion for mistrial; and (4) was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the trial court. *Standard Fire Ins. Co. v. Reese,* 584 S.W.2d 835, 839 (Tex.1979). Our review of an improper jury argument claim must cover the whole case, which begins with the voir dire and ends with closing argument. *Id.* at 840. The complainant must show that the probability the improper argument caused harm is greater than the probability the verdict was grounded on the evidence. *Id.* at 840.

National Freight objected to the first instance when Snyder's counsel urged the jury to send a message to National Freight. The trial court responded to the initial objection by instructing the jury that "what the lawyers say is not evidence." The trial court sustained National Freight's subsequent objections when Snyder's counsel repeated the argument. National Freight did not seek an instruction from the trial court for the jury to disregard the argument on these subsequent occasions. Furthermore, the trial court did not voluntarily instruct the jury to disregard the argument when it sustained National Freight's objections.

As reflected in the preceding paragraph, National Freight did not ask for a curative instruction from the trial court each time the challenged argument occurred. *See Fowler v. Garcia,* 687 S.W.2d 517, 520 (Tex.App.-San Antonio 1985, no writ)(Failure to press for an instruction at the time of an allegedly erroneous jury argument operates as a waiver of any complaint that may be made as to the argument.). However, a party is not required to preserve error if the argument is deemed to be incurable. *Otis Elevator Co. v. Wood,* 436 S.W.2d 324, 333 (Tex.1968). Furthermore, an improper jury argument will not result in a reversal under the *Reese* standard unless it was incurable. *Id.* at 839–40.

■ An incurable argument is one that is so inflammatory that its harmfulness cannot be eliminated by an instruction to the jury to disregard it. *Otis Elevator Co.,* 436 S.W.2d at 333. There are only rare instances when incurable harm results from improper argument. *Reese,* 584

S.W.2d at 839. The previously recognized types of incurable argument have included: (1) appeals to racial prejudice; (2) the use of inflammatory epithets such as "liar," "fraud," "faker," "cheat," and "imposter;" and (3) unsupported charges of perjury. *Id.* at 840.

We conclude that the argument urging the jury to send National Freight a message did not constitute incurable jury argument. This argument was not so inflammatory that a timely instruction from the trial court would not have alleviated the harm, if any, caused by the argument. Moreover, the record does not reflect a greater probability that the jury's verdict was based upon the challenged argument rather than the evidence presented at trial. National Freight's Issue No. 1 is overruled.

### Evidentiary Rulings

National Freight challenges four evidentiary rulings made by the trial court. National Freight has presented these complaints in separate sub-issues identified as Issues Nos. 2(a), 2(b), 2(c), and 2(d). We address each of the sub-issues separately and treat them as separate issues on appeal.

 The admission and exclusion of evidence is committed to the trial court's sound discretion. *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995). An appellate court must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *State Bar of Tex. v. Evans,* 774 S.W.2d 656, 658 n. 5 (Tex.1989). The court should not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment. *See* Tex.R.App. P. 44.1; *see also Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex.1989). In making this determination, we review the entire record. *Alvarado,* 897 S.W.2d at 754.

### Estimates of Future Medical Care

 National Freight argues in Issue No. 2(a) that the trial court erred in admitting documents that reflected the costs of future medical care. Snyder presented the videotaped deposition testimony of Dr. Oliver Lee Kesterson III, M.D. at trial. Dr. Kesterson testified that Snyder needed to have neck surgery as a result of the injuries he suffered in the accident. With regard to the cost of the surgery Snyder might need in the future, Dr. Kesterson testified as follows:

Q. Okay. Doctor, the—the surgery that we talked about, I went ahead—and got some estimates on that, and I'd like to see if—if these seem reasonable to you for the procedure. The—your office was kind enough to forward to me an estimate on what your fees would be for this—this particular procedure, and that is approximately $23,127.60. Could you look at this, Doctor, and—and identify that for me?

A. I'm going to admit my ignorance to what I bill. I'm shocked it's—I mean, I don't—I just—I don't know. I guess if—if Wendy Christensen sent that to you, then I guess that's what we bill.

Q. Okay. That is—

A. Collecting is a little bit different deal.

Q. I understand. But is this—is this—is this a fair or—or an accurate representation of the procedure that would need to be done on—on Mr. Snyder?

A. Yes, it is.

Q. And is it from your office?

A. Yes.

Q. Okay. And would these—well, you don't—do you know whether or not these are the usual and customary charges?

A. If Wendy Christensen says that, I have to assume that's true.

. . . .

Q. I'm going to show you what I've marked as Exhibit Four, Doctor, and ask if you can identify what that is, please.

A. It is a fee estimate from somebody with A.C.E. Anesthesia.

Q. Okay. And that would be for the anesthesia during the surgery, correct?

A. I presume so.

Q. Okay.

A. I know Doctor Leonard is part of that.

Q. Okay. Do you know, Doctor, whether or not those are—usual and customary charges for anesthesia?

A. I couldn't comment on that.

Q. Okay. And finally, I'm going to show you what I've marked as Exhibit Number Five and ask if you can identify what that is.

A. A letter from Texas Health Resources, upcoming—an estimate of charges for upcoming surgery at Harris Methodist Fort Worth.

Q. Okay. Do you have an opinion, Doctor, as to whether or not the—the charges reflected in that exhibit are usual and customary charges for a like procedure?

A. It sounds familiar, but I—you know, I'm not the person that would know that, but I—it sounds about right.

At the conclusion of Dr. Kesterson's video-taped deposition testimony, Snyder offered into evidence the written surgery estimate prepared by Dr. Kesterson's office and the written hospital estimate referenced during his deposition. National Freight objected to the admission of these documents on the basis that Dr. Kesterson indicated in his testimony that he lacked sufficient personal knowledge of the costs reflected in the documents.[1] National Freight appeals the trial court's rulings overruling the objections.

 To sustain an award of future medical expenses, the plaintiff must present evidence to establish that in all reasonable probability future medical care will be required and the reasonable cost of that care. *See Rosenboom Mach. & Tool, Inc. v. Machala,* 995 S.W.2d 817, 828 (Tex. App.-Houston [1st Dist.] 1999, pet. denied). TEX.R. EVID. 602 requires a witness to have personal knowledge of the matters addressed in his or her testimony. However, Rule 602 is expressly made subject to the provisions of TEX.R. EVID. 703. Rule 703 provides that an expert may base his or her testimony on facts or data that may not be admissible if the facts or data are of a type reasonably relied upon by the expert. With respect to the estimate for his services, Dr. Kesterson indicated that he based his opinion on the information supplied by a person in his office. This statement addresses the reasonable reliance requirement of Rule 703 for Dr. Kesterson's expert opinion on the cost of his services for the future surgery. Dr. Kesterson also testified that the estimate of the hospitalization costs "sounded about right" to him. Moreover, the evidentiary rulings that National Freight is challenging were to the admission of the documents that contained

---

1. Snyder also sought to offer the written estimate for the anesthesia cost into evidence. Snyder withdrew the offered exhibit in response to National Freight's objection that Dr. Kesterson lacked personal knowledge of the anesthesia cost.

the written estimates to which Dr. Kesterson had previously testified without objection. When erroneously admitted evidence is merely cumulative, any error in its admission is harmless. *Gee*, 765 S.W.2d at 396. We conclude that the trial court did not abuse its discretion in admitting the written estimates into evidence. Furthermore, to the extent their admission may have been error, such error was harmless. National Freight's Issue No. 2(a) is overruled.

### Evidence of Health Insurance Coverage

 In Issue No. 2(b), National Freight attacks the trial court's denial of its request to present evidence regarding Snyder's health insurance coverage. The collateral source rule precludes a tortfeasor from obtaining the benefit of, or even mentioning, payments to the injured party from sources other than the tortfeasor. *See Taylor v. Am. Fabritech, Inc.*, 132 S.W.3d 613, 626 (Tex.App.-Houston [14th Dist.] 2004, pet. denied). If a plaintiff claims financial hardship, however, evidence of a collateral source may be offered to impeach the credibility of the witness. *See Macias v. Ramos*, 917 S.W.2d 371, 374 (Tex.App.-San Antonio 1996, no writ). National Freight contends that Snyder opened the door in the following testimony elicited from his wife during cross-examination:

Q. You know that this lawsuit is about money, right?

A. Yes, sir.

Q. And you want to help your husband get money in this lawsuit, don't you?

A. Well, we can't have the surgeries without money.

. . . .

Q. Okay. Mr. Snyder hasn't had surgery to his neck, has he?

A. No, sir.

Q. Mr. Snyder has not had surgery to his low back, has he?

A. No, sir.

Q. All right. As we sit here today, there [are] no firm plans to have surgery to his neck, [are] there?

A. We've—we've—we've—we've scheduled appointments, but we've had to change them because of the court dates being changed because we didn't have the money to go have the surgery done.

In response to the above-quoted testimony, National Freight requested to offer evidence regarding Snyder's health insurance coverage. The request was denied. In making an offer of proof outside of the jury's presence, National Freight subsequently asked Mrs. Snyder several questions about her husband's insurance coverage. Mrs. Snyder testified that, while her husband had health insurance coverage, it had paid "very little" of his previous bills and that she anticipated that it would only pay a small amount of the costs of the health care services he would receive in the future.

The record does not reflect that the trial court abused its discretion in denying National Freight's request to offer collateral source evidence. The assertion that Snyder opened the door by presenting evidence regarding financial hardship is tenuous given the fact that the testimony was given by a non-party spouse during cross-examination. Furthermore, the evidence developed during the offer of proof indicates that a large portion of Snyder's future medical care would not be covered by insurance. National Freight's Issue No. 2(b) is overruled.

### Evidence of Injuries' Effect on Work

 In Issue No. 2(c), National Freight contends that the trial court erred in permitting Snyder to testify over objec-

tion about the effect of his injuries on his ability to work. National Freight contends that this evidence was irrelevant because Snyder did not seek a recovery for lost income. Snyder's counsel asserted that the testimony was relevant to the effect of his injuries on his physical condition. Snyder testified that the injuries caused him pain when working as a self-employed mechanic and rancher. We agree with the trial court's determination that this evidence was relevant to Snyder's claims for pain and suffering and physical impairment. Issue No. 2(c) is overruled.

### Surveillance Evidence

National Freight's Issue No. 2(d) concerns the playing of a surveillance video showing Snyder at work at his mechanic shop. The trial court did not permit National Freight to show a six-second portion of the video depicting Snyder engaging in movements with his arm that appeared to be the simulation of an inappropriate act. National Freight asserts that the trial court erred in denying admission of the challenged portion of the video because it was the only portion of the video that revealed Snyder's full range of motion with his injured arm.

TEX.R. EVID. 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by danger of unfair prejudice. When a party objects under Rule 403, a trial court must conduct a balancing test, weighing the danger of prejudice against the probative value of the evidence. *See Waldrep v. Tex. Employers Ins. Ass'n,* 21 S.W.3d 692, 703 (Tex.App.-Austin 2000, pet. denied). "Unfair prejudice" means an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one. *See Weidner v. Sanchez,* 14 S.W.3d 353, 365 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

As noted by the trial court, the conduct depicted in the video was inflammatory. Many jurors likely would have been offended by it. From a probative value standpoint, the challenged portion of the video was only a small portion of a much longer video showing Snyder working in his shop. One of the remaining portions of the video showed Snyder using both of his arms to pick up a large object. We conclude that the trial court did not abuse its discretion in determining that the probative value of the excluded surveillance video was substantially outweighed by the danger of unfair prejudice. National Freight's Issue No. 2(d) is overruled.

### Cumulative Error

In Issue No. 3, National Freight asserts that the errors it has alleged in Issues Nos. 1, 2(a), 2(b), 2(c), and 2(d) constitute cumulative error requiring the reversal of the trial court's judgment. Some reviewing courts have recognized a "cumulative-error doctrine" in situations wherein the record shows multiple errors that in isolation are not reversible but in combination give rise to reversible error. *Univ. of Tex. at Austin v. Hinton,* 822 S.W.2d 197, 205 (Tex.App.-Austin 1991, no writ). The cumulative-error doctrine does not apply in this case, however, because we have found no error committed by the trial court with respect to the preceding issues asserted by National Freight. *See Hinton,* 822 S.W.2d at 205. National Freight's Issue No. 3 is overruled.

### Sufficiency of the Evidence—Past and Future Medical Expenses

In Issue No. 4, National Freight attacks the legal and factual sufficiency of the evidence to support the jury's award of damages to Snyder for past and future medical expenses. The jury awarded Snyder $23,000 for past medical ex-

penses and $40,000 for future medical expenses. In analyzing a legal sufficiency issue, we must consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that supports it. *City of Keller v. Wilson,* 168 S.W.3d 802, 821–22 (Tex.2005). The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review. *Id.* at 827–28. We credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *Id.* The trier of fact is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Id.* at 819–21. We cannot substitute our judgment for that of the jury so long as the evidence falls within the zone of reasonable disagreement. *Id.* at 821–22. We may sustain a no-evidence challenge only when (1) the record discloses a complete absence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810. In determining the factual sufficiency of the evidence, we consider and weigh all the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

With respect to past medical expenses, National Freight contends that there is no competent evidence of the causal relationship between Snyder's medical expenses and the accident. Snyder filed several medical services affidavits listing medical

expenses totaling $22,839.86.[2] *See* TEX. CIV. PRAC. & REM.CODE ANN. § 18.001 (Vernon 1997). We held in *Beauchamp v. Hambrick,* 901 S.W.2d 747, 749 (Tex.App.-Eastland 1995, no writ), that filing affidavits in compliance with Section 18.001 does not conclusively establish the amount of a claimant's expenses. Furthermore, Section 18.001 does not address the issue of causation. *Id.*

National Freight primarily contends that Snyder's evidence of causation is deficient because Snyder failed to segregate past medical expenses attributable to the accident from expenses incurred for other medical conditions. The supreme court held in *Texarkana Mem'l Hosp., Inc. v. Murdock,* 946 S.W.2d 836, 839–40 (Tex. 1997), that a plaintiff should only recover for past medical expenses arising from treatment necessitated by the defendant's negligence. Consequently, *Murdock* requires a plaintiff who is being treated for multiple conditions that are brought on by independent causes to segregate the medical expenses attributable to each condition. *Id.* at 840.

Snyder presented a great deal of evidence detailing the medical problems he suffered as a result of the accident. In addition to his own testimony and the testimony of his wife and friends, Snyder presented the testimony of three physicians regarding the injuries that he claimed as a result of the accident and the treatment necessitated by those injuries. Several excerpts of Snyder's medical records were also offered into evidence. Accordingly, Snyder presented legally sufficient evidence to support an award of damages for past medical expenses. How-

**2.** As noted previously, the jury awarded Snyder $23,000 for past medical expenses. Snyder voluntarily agreed to remit $160.14 of the amount awarded by the jury so that the amount of past medical expenses awarded in the trial court's judgment complied with the total amount of expenses listed in the medical services affidavits ($22,839.86).

ever, Snyder's evidence regarding the amount of past medical expenses attributable to the accident was deficient. The itemized statements of medical charges attached to Snyder's medical services affidavits contain charges that were not related to the accident, including charges for treating Snyder for a heart condition. Snyder did not offer evidence that attempted to segregate the medical expenses attributable to the accident from the unrelated expenses as required by *Murdock*. Furthermore, Snyder's counsel asked the jury during closing argument to award the total amount of expenses listed in the medical services affidavits for past medical expenses.

The failure to segregate past medical expenses does not render an unsegregated total damage award legally insufficient. *Id.* Instead, it entitles the defendant to a new trial so that the plaintiff can prove what medical expenses were attributable to the defendant's alleged negligence. *Id.* Snyder seeks to avoid the necessity of a new trial by offering to remit the amount of past medical expenses that are not related to the accident. *See* TEX. R.APP. P. 46.5. Absent authority to the contrary, we conclude that a remittitur is not an appropriate remedy for a party's failure to segregate past medical expenses at trial.

National Freight also attacks the sufficiency of the evidence supporting the jury's award of future medical expenses. We have previously addressed the matter of Snyder's need for neck surgery in the future in discussing the admissibility of the cost estimates for the surgery. National Freight contends that the evidence of Snyder's need for the surgery was insufficient. It also asserts that the evidence of the estimates for the surgery was insufficient to support the jury's award.

The award of future medical expenses lies within the discretion of the jury. *City of San Antonio v. Vela*, 762 S.W.2d 314, 321 (Tex.App.-San Antonio 1988, writ denied). To sustain an award of future medical expenses, the claimant must present evidence to establish that, in all reasonable probability, future medical care will be required and the reasonable cost of that care. *Machala*, 995 S.W.2d at 828; *Whole Foods Mkt. Southwest, L.P. v. Tijerina*, 979 S.W.2d 768, 781 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). Although the preferred practice for establishing future medical costs is through expert medical testimony, there is no requirement that the claimant establish such costs through expert testimony. *Tijerina*, 979 S.W.2d at 781. Because no precise evidence is required, the jury may award such damages based upon the nature of the injury, the medical care rendered prior to trial, and the condition of the injured party at the time of trial. *Vela*, 762 S.W.2d at 321.

Dr. Kesterson evaluated Snyder for neck pain occurring after the accident. Snyder underwent various forms of treatment prior to seeing Dr. Kesterson to treat the neck pain, but none of them were successful. At Dr. Kesterson's direction, another physician performed a nerve root block on Snyder. However, Snyder did not get any relief from this procedure. Dr. Kesterson testified that Snyder had exhausted his non-surgical treatment options and that surgery was the only remaining option for treating Snyder's neck pain.

National Freight contends that Dr. Kesterson was equivocal in his testimony regarding the need for Snyder to have surgery in the future. However, Dr. Kesterson prefaced his opinions on reasonable medical probability at the outset of his testimony. He also testified that the sur-

gery would be a "reasonable thing" for Snyder to do. This testimony, coupled with the evidence of how non-surgical treatment options had failed, constituted sufficient evidence of the need for Snyder to have surgery in the future. Furthermore, Snyder's decision not to have the surgery prior to trial did not negate Dr. Kesterson's testimony regarding the need for the surgery.

With respect to the costs for the future surgery, Dr. Kesterson testified that the estimates of $23,127.60 for his fees and the costs of $20,000 for the hospitalization sounded "about right" to him. Snyder elicited this oral testimony from Dr. Kesterson without objection. We have previously determined that the trial court did not abuse its discretion in subsequently admitting documents that contained these written estimates. This expert opinion evidence of the estimated costs of the future surgery is legally and factually sufficient to support the jury's award of future medical expenses in the amount of $40,000.

Issue No. 4 is sustained in part with respect to the factual sufficiency of the evidence supporting the jury's award of damages to Snyder for past medical expenses. The remaining complaints presented in Issue No. 4 are overruled.

### Accrual Date of Prejudgment Interest

In Issue No. 5, National Freight contends that the trial court erred in determining the accrual date for prejudgment interest. Prejudgment interest accrues on the amount of a judgment during a period that begins on the earlier of the 180th day after the date a defendant receives written notice of a claim against it or the date the suit is filed. TEX. FIN.CODE ANN. § 304.104 (Vernon Supp.2005). The

trial court determined that a letter written by Snyder's attorney to National Freight's claims adjuster on February 3, 2000, constituted a written notice of claim. Accordingly, the trial court calculated prejudgment interest from August 1, 2000, which was approximately the 180th day after February 3, 2000. National Freight contends that the trial court should have used December 14, 2001, (the date suit was filed) as the accrual date.[3]

We review a trial court's award of prejudgment interest under an abuse of discretion standard. *See Toshiba Mach. Co., Am. v. SPM Flow Control, Inc.*, 180 S.W.3d 761, 785 (Tex.App.-Fort Worth 2005, pet. granted, judgm't vacated w.r.m.); *J.C. Penney Life Ins. Co. v. Heinrich*, 32 S.W.3d 280, 289 (Tex.App.-San Antonio 2000, pet. denied). Under this standard, we will not disturb a trial court's findings on factual issues unless the court reasonably could have reached only one decision and failed to do so. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992). However, "[a] trial court has no 'discretion' in determining what the law is or applying the law to the facts." *Id.* at 840. Accordingly, the abuse of discretion standard applies to the trial court's factual findings as they relate to prejudgment interest; but the de novo standard applies to the trial court's application of the law to the facts. *Toshiba*, 180 S.W.3d at 785; *Heinrich*, 32 S.W.3d at 289. As was the case in *Toshiba*, the trial court's award of prejudgment interest at issue in this appeal hinges on the interpretation of a single letter where the existence and contents of the letter are not in dispute. The question is whether the letter constituted notice of Snyder's claims as a matter of law. Therefore, as a

---

**3.** An accrual date of December 14, 2001, would reduce the amount of prejudgment interest by approximately $11,000.

practical matter, our review of the prejudgment interest issue in this case is de novo. *See Toshiba*, 180 S.W.3d at 785–86.

The text of the letter in question reads as follows:

February 3, 2000

**MELINDA WOODWARD**

Crawford & Company Ins.

209 S. Danville Ste # 215

Abilene, Texas 79605

Re: Your Insured: NATIONAL FREIGHT INC. & STEVEN HOLDER
Claim #: 179-89084
Claimant: **JOHN B. SNYDER**
D/A: 01/27/00

Dear Ms. Woodward:

Please be advised that we have been retained to represent **JOHN B. SNYDER** for bodily injuries in the above referenced incident.

Please reflect our representation in your files and direct all future correspondence concerning this matter through this office. When our client has been released by the treating physician, we will forward all medical specials to you for your review.

If our client has given a recorded or written statement, this is a request for a copy of any such statement. We look forward to working with you on this case. (emphasis in original)

By its express terms, Section 304.104 requires written notice of a claim. A "claim" is a demand for compensation or an assertion of a right to be paid. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 531 (Tex. 1998). A claim need not demand an exact amount or list every element of damage. *Bevers v. Soule*, 909 S.W.2d 599, 603 (Tex. App.-Fort Worth 1995, no writ). However, a document that merely provides notice of an accident and resulting injuries does not constitute a claim. *Robinson v. Brice*, 894 S.W.2d 525, 528 (Tex.App.-Austin 1995, writ denied).

National Freight contends that the February 3, 2000, letter merely constitutes a letter of representation from Snyder's counsel. It asserts that the letter is deficient because it does not demand compensation or assert a right to be paid. We disagree. The letter begins by referencing the claims adjuster's claim number and identifying Snyder as a claimant. The letter additionally advised the claims adjuster that Snyder's medical bills would be forwarded to her for her review. At a minimum, the letter constitutes an assertion of a right to be paid. The letter is similar to the letter in *Bevers*, which the court determined to constitute a written notice of claim. *Id.* at 603. As noted in *Bevers*, the writing need not demand an exact amount or list every element of damage. *Id.* National Freight's Issue No. 5 is overruled.

### This Court's Ruling

The trial court's award of damages to Snyder for past medical expenses is reversed and remanded for trial. The remainder of the trial court's judgment is affirmed.