In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-12-00296-CV**

_____

**IN RE COMMITMENT OF ROBERT JOSEPH FIERRO**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 11-10-10852 CV**

**MEMORANDUM OPINION**

The State of Texas filed a petition to commit Robert Joseph Fierro as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2012). A jury found that Fierro is a sexually violent predator and the trial court rendered a final judgment and an order of civil commitment. On appeal, Fierro challenges the State's comments made during closing arguments, the legal and factual sufficiency of the evidence, one of the conditions of civil commitment, and the constitutionality of the SVP statute. We affirm the trial court's judgment.

1

In issues two and three, Fierro challenges the legal and factual sufficiency of the evidence to support the jury's verdict. The State must prove, beyond a reasonable doubt, that a person is a sexually violent predator. Tex. Health & Safety Code Ann. § 841.062(a) (West 2010). Under a legal sufficiency review, we assess all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find, beyond a reasonable doubt, the elements required for commitment under the SVP statute. *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied). It is the factfinder's responsibility to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* at 887. Under factual sufficiency review, we weigh the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied).

A person is a "sexually violent predator" if he is a repeat sexually violent offender and suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Tex. Health & Safety Code Ann. § 841.003(a) (West 2010). A "behavioral abnormality" is "a congenital or acquired

condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id*. at § 841.002(2) (West Supp. 2012). "A condition which affects either emotional capacity or volitional capacity to the extent a person is predisposed to threaten the health and safety of others with acts of sexual violence is an abnormality which causes serious difficulty in behavior control." *In re Commitment of Almaguer*, 117 S.W.3d 500, 506 (Tex. App.—Beaumont 2003, pet. denied).

According to the record, Fierro pleaded guilty to indecency with a child, sexual assault, and aggravated sexual assault. Fierro testified that he is incarcerated for sexually assaulting two sixteen-year-old girls. He denied approaching women on the streets and grabbing their breasts, but admitted being charged with public lewdness for such offenses. Fierro testified that he participated in sex offender treatment while on deferred adjudication, but subsequently sexually offended. He admitted losing control of his sexual urges on multiple occasions throughout his life.

However, Fierro testified that he is not a sex addict and no longer has a problem with sex or a desire to reoffend. Fierro explained that sex offender treatment has taught him about negative beliefs and anger, rational thoughts,

3

relapse prevention, and stopping deviant fantasies. He acknowledged that he had hurt the victims, the victims' families, and his own family, and that he is to blame. Fierro explained that sexual assault is wrong. He testified that he wants to move on with his life and that reoffending would let both himself and his family down. He promised not to sexually assault again and testified that he would be at fault if he reoffended.

Dr. Antoinette McGarrahan, a forensic psychologist, testified that Fierro is sexually aroused by, interested in, and acts on urges and fantasies related to inflicting harm and humiliation upon other people. She described this behavior as sexually deviant. She diagnosed Fierro with sexual sadism and frotteurism. McGarrahan explained that Fierro has no remorse, does not believe he is at fault, takes no responsibility, and makes excuses for his behavior. Dr. Lisa Clayton, a medical doctor specializing in psychiatry and forensic psychiatry, testified that Fierro is gratified and aroused by physically and psychologically threatening or harming women. Clayton diagnosed Fierro with sexual sadism, frotteurism, paraphilia not otherwise specified, alcohol abuse in remission, cocaine dependence in remission, and antisocial personality disorder. She explained that Fierro is sexually deviant, is a serial rapist, exhibits assaultive violence, and portrays

himself as a victim. McGarrahan and Clayton testified that sexual sadism is chronic and McGarrahan explained that this condition requires intensive treatment.

McGarrahan opined that Fierro has difficulty following the rules, as evidenced by the fact that he engaged in violent acts even when under significant constraints. According to McGarrahan, the ramifications of being caught and punished did not deter Fierro from offending. She noted that Fierro was a leader in a prison gang, participated in prison riots and fighting, spent time in administrative segregation, and was found in possession of shanks. Clayton testified that Fierro minimizes his violent conduct in prison and his gang affiliation.

McGarrahan testified that Fierro claims to have previously participated in sex offender treatment, but she testified that Fierro continued to sexually offend. She testified that Fierro is currently participating in treatment, but continues to show no remorse and continues to deny that he did anything wrong, is a sex offender, needs sex offender treatment, or is sexually deviant. Clayton testified that Fierro lacks victim empathy, sees himself as a victim, and takes no responsibility for his offenses. She did not believe that Fierro's current sex offender treatment will help him and testified that the treatment may even have a counter-productive effect. She explained that treatment had not deterred Fierro from escalating, may have given him more ideas, and will not stop his serial raping.

5

McGarrahan testified that, based on Fierro's score on the Hare Psychopathy Checklist, Fierro is a psychopath. Fierro's psychopathic characteristics include pathological lying, lack of remorse or guilt, callousness, impulsivity, failure to accept responsibility, and poor behavioral controls. Clayton agreed that Fierro is a psychopath and she pointed to evidence of his gang involvement, manipulation of others, attitude toward others, and lack of conscience, guilt, or remorse. McGarrahan testified that Fierro's score on the Static-99R places him in the moderately high range for reoffense and his score on the Minnesota Sex Offender Screening Tool Revised placed Fierro at a high risk for sexually violent offense. She identified several factors that increase Fierro's risk of reoffense: denial and minimization, stranger and unrelated victims, substance abuse, non-sexual violence, use of a weapon during offenses, lack of an emotionally intimate relationship with an adult, psychopathy, sexual deviancy, and offenses that occurred in public, after Fierro was caught and punished, and during supervision. Clayton testified that Fierro's ability to obtain employment is a positive factor, but that he has numerous risk factors: multiple time periods of sexually deviant behavior, use of violence and force, history of assaultive and violent behavior, gang association and violent conduct in prison, lack of victim empathy, failure to

take responsibility, good health and young age, sexual assault while in a relationship, and sexual offenses after sex offender treatment.

Clayton testified that Fierro's emotional or volitional capacity has been affected because Fierro cannot think about sex without his thoughts progressing to sexual deviancy, he cannot control his urges, in the free world he will be presented with many potential victims, and he is not deterred by the possibility of spending life in prison. McGarrahan testified that Fierro's sexual offenses and sexual deviancy constitute evidence that his emotional and volitional capacity have been affected:

> The willingness -- the volitional capacity -- the willingness to engage in violent, humiliating sexual acts with women, his willingness to do that without consideration of the consequences for the victim or even for himself means that his emotional capacity has been affected. That is the way he thinks about the world, the way he feels, the way he perceives things is not normal. It's been affected because of this condition and it is affected to the point at which it -- it makes him likely to engage in another predatory act of sexual violence.

McGarrahan and Clayton both concluded that Fierro suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

On appeal, Fierro argues that the experts' testimony was too conclusory to support a finding that he suffers from a behavioral abnormality or has serious difficulty controlling his behavior. We disagree. Both doctors are licensed in their

7

respective fields. *See In re Commitment of Burnett*, No. 09-09-00009-CV, 2009 Tex. App. LEXIS 9930, at *14 (Tex. App.—Beaumont Dec. 31, 2009, no pet.) (mem. op.). They interviewed Fierro and reviewed records regarding his background, offenses, and incarceration. *See id.* McGarrahan administered actuarial tests and testified that these types of tests are generally accepted in her field. The experts relied on the types of records relied on by experts in their respective fields and performed their evaluations in accordance with their training as professionals in their respective fields. *See id.* The doctors based their opinions on the facts and data gathered from the records they reviewed, their interviews with Fierro, and the risk assessments they conducted. *See id.* They explained in detail the facts and evidence they found relevant in forming their opinions and how those facts played a role in their evaluations. *See id.* Both experts concluded that Fierro suffers from a behavioral abnormality as defined by the SVP statute. *See id.* Their testimony is not so conclusory as to be completely lacking in probative value. *See id.*

In addition to the experts' opinions that Fierro has a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence, the jury heard evidence of Fierro's risk factors, actuarial test scores, criminal history, sexual offenses, and diagnoses. The jury was entitled to infer current serious difficulty

8

controlling behavior based on Fierro's past behavior, Fierro's testimony, and the experts' testimony. *See id.* at *13; *see also In re Commitment of Grinstead*, No. 09-07-00412-CV, 2009 Tex. App. LEXIS 228, at *20 (Tex. App.—Beaumont Jan. 15, 2009, no pet.) (mem. op.). The jury could reasonably conclude that Fierro has serious difficulty controlling his behavior and is likely to commit predatory acts of sexual violence directed toward individuals for the primary purpose of victimization. *See Mullens*, 92 S.W.3d at 887; *see also Almaguer*, 117 S.W.3d at 506; *Burnett*, 2009 Tex. App. LEXIS 9930, at *13. Such conclusions are implicit in a finding that Fierro suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See Grinstead*, 2009 Tex. App. LEXIS 228, at *16; *see also In re Commitment of Bailey*, No. 09-09-00353-CV, 2010 Tex. App. LEXIS 6685, at **12-13 (Tex. App.—Beaumont Aug. 19, 2010, no pet.) (mem. op.).

Reviewing all the evidence in the light most favorable to the verdict, a rational jury could have found, beyond a reasonable doubt, that Fierro has a behavioral abnormality that predisposes him to commit a predatory act of sexual violence; therefore, the evidence is legally sufficient. *See Kansas v. Crane,* 534 U.S. 407, 413, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002); *see also Mullens*, 92 S.W.3d at 885. Weighing all of the evidence, the verdict does not reflect a risk of

injustice that would compel ordering a new trial. *See Day*, 342 S.W.3d at 213. We overrule Fierro's second and third issues.

## Jury Argument

In issue one, Fierro contends that the State engaged in improper and harmful jury argument. To obtain a reversal based upon improper jury argument, the appellant must demonstrate (1) an error (2) that was not invited or provoked, (3) that was preserved by the proper trial predicate, such as an objection, a motion to instruct, or a motion for mistrial, (4) was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge, and (5) that the argument by its nature, degree, and extent constituted reversibly harmful error. *Standard Fire Ins. Co. v. Reese,* 584 S.W.2d 835, 839 (Tex. 1979). "[T]he complainant must show that the probability that the improper argument caused harm is greater than the probability that the verdict was grounded on the proper proceedings and evidence." *Id*. at 840.

During closing arguments, the State began to argue, "First off, these first five offenses, yes, he went up to women, he grabbed them and eventually –[.]" Fierro's counsel objected that the State's argument assumed facts not in evidence, but the trial court overruled the objection. The State proceeded with its argument and discussed the five offenses. Subsequently, in rebuttal, the State argued that

10

Fierro "went up to women on the street and grabbed their breasts[]" and "raped women in cars." Fierro did not object to the State's argument. When the State argued that Fierro had shown "no empathy when he talked about his ten victims today[,]" Fierro's counsel objected that the State's argument assumed facts not in evidence. The trial court overruled the objection.

On appeal, Fierro contends that his guilt for these alleged crimes was not before the jury and, consequently, the State's argument was improper. Fierro asserts that the State's arguments suggested to the jury that it should consider whether these other offenses occurred and punish Fierro for those offenses. According to Fierro, the State failed to limit its closing argument to the evidence presented at trial and encouraged the jury to consider irrelevant facts when rendering a verdict.

However, the record does not indicate that Fierro objected to similar arguments or requested a running objection to the State's argument. Additionally, as to the arguments objected to, the evidence was such that the probability that the State's argument caused harm is not greater than the probability that the verdict was based on the proper proceedings and evidence. *See Reese*, 584 S.W.2d at 840. We conclude that the State's arguments that were not objected to were not so inflammatory that a timely instruction would not have alleviated the harm, if any,

11

caused by the argument. *See Nat'l Freight, Inc. v. Snyder*, 191 S.W.3d 416, 421 (Tex. App.—Eastland 2006, no pet.). We overrule issue one.

Conditions of Civil Commitment

In issue four, Fierro argues that the trial court's civil commitment order imposes a condition that is too vague for a person of ordinary intelligence to apply and understand. Specifically, the trial court found it appropriate to establish a child safety zone and ordered that Fierro shall not "participate in an activity that at any time provides athletic, civic or cultural affairs to persons 17 years of age or younger[.]" At trial, Fierro sought clarification as to this condition and the trial court responded as follows:

> The statute allows me to establish a child safety zone in every case, which I do. Okay? This is enforced by the Counsel for Sex Offender Treatment Providers that you are going to get to meet. Upon release from prison, they are going to be the ones that pick you up. Okay?
> . . .
>
> It says that the Court has determined that it is appropriate to establish child safety zones such that Robert Joseph Fierro shall not participate in any activity that at any time provides athletic, civic and cultural affairs to persons 17 years of age or younger or be within 1,000 feet of a perimeter where children gather, including school, daycare facility, playground, tennis, swimming pool or video arcade. Okay? It states exactly what it means. Okay? So, that's what it says, and that's the way it's going to be followed.

12

On appeal, Fierro contends that this condition lacks guidelines for uniform application, requiring Fierro to guess at its meaning and, therefore, violates due process. He contends that this condition gives substantial discretion to the police and may also lead to infringement of First Amendment rights. The record does not indicate that Fierro presented these complaints to the trial court either when he sought clarification of the condition or at any time thereafter. *See* Tex. R. App. P. 33.1(a); *see also In re Commitment of Sprague*, No. 09-10-00228-CV, 2011 Tex. App. LEXIS 4503, at *31 (Tex. App.—Beaumont June 16, 2011, no pet.) (mem. op.). Thus, issue four is not preserved for appellate review.

Supplemental Issue

In a supplemental issue, Fierro argues that the Texas Supreme Court's decision in *In re Bohannan*, ___ S.W.3d ___, No. 10-0605, 2012 Tex. LEXIS 734 (Tex. Aug. 31, 2012) (not yet released for publication) interpreted portions of the SVP statute in such a way as to render the statute facially unconstitutional. In *Bohannan*, the Texas Supreme Court explained that a behavioral abnormality is a condition that predisposes sexually violent conduct. *Bohannan*, 2012 Tex. LEXIS 734, at *14. The Court explained that "condition and predisposition are one and the same[,]" and "whether a person 'suffers from a behavioral abnormality that makes

13

the person likely to engage in a predatory act of sexual violence' is a single, unified issue." *Id*. at **16-17.

Fierro contends that *Bohannan* relieves the State of the burden of demonstrating that a person has a mental illness or disorder. However, this Court has previously concluded that "*Bohannan* did not eliminate any proof required by the statute for a sexually-violent-predator finding, nor did the Supreme Court change the statute or render it unconstitutional." *See In re Commitment of Anderson*, ___ S.W.3d ___, No. 09-11-00613-CV, 2013 Tex. App. Lexis 607, at *17 (Tex. App.—Beaumont Jan. 24, 2013, no pet. h.) (not yet released for publication). We, therefore, reject Fierro's arguments and affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on February 20, 2013
Opinion Delivered March 7, 2013
Before McKeithen, C.J., Gaultney and Horton, JJ.