

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-16-00048-CV

_____

SUSAN BOBO, Appellant

V.

ELEZEBETH VARUGHESE, Appellee

On Appeal from the 17th District Court
Tarrant County, Texas
Trial Court No. 017-271575-14

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Burgess

OPINION

After a four-day trial, a Tarrant County[1] jury returned a verdict in favor of Susan Bobo for $40,358.21 for injuries she received in a motor vehicle accident with Elezebeth Varughese. Following a hearing on Bobo's motion for judgment, the trial court entered a final judgment on March 29, 2016, in favor of Bobo in the amount of $49,072.28, including the damages awarded by the jury, prejudgment interest, and court costs. Varughese filed a motion to modify judgment, and after a hearing, the trial court entered its amended final judgment in which it (1) awarded Bobo $43,823.13, including the damages awarded by the jury, prejudgment interest, and court costs, (2) awarded Varughese $44,857.27 in litigation costs incurred after Bobo rejected her settlement offer made pursuant to Rule 167.2 of the Texas Rules of Civil Procedure, and (3) entered a take-nothing judgment in favor of Varughese after offsetting her litigation costs against the amount of judgment in favor of Bobo.[2] On appeal, Bobo complains that the trial court erred in holding that the date on which prejudgment interest began to accrue was June 15, 2013, instead of January 26, 2013. We find no reversible error and affirm the judgment of the trial court.

I.      Procedural Background

This case arises out of a motor vehicle collision occurring on July 18, 2012, in which Bobo was a passenger in a vehicle that collided with a vehicle driven by Varughese. On July 27, 2012,

---

[1]Originally appealed to the Second Court of Appeals in Fort Worth, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We follow the precedent of the Second Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

[2]*See* TEX. R. CIV. P. 167.4(a), (b)(1) (providing that when a claimant rejects a settlement offer made under Rule 167 and the judgment would be less than eighty percent of the settlement offer, the court must award the defendant who made the offer litigation costs against the claimant "from the time the offer was rejected to the time of judgment").

Bobo's attorney sent a letter to the claims department of Varughese's insurer, Geico Insurance, stating, in relevant part:

> RE: OUR CLIENT: Susan D. Bobo
> LOSS DATE: 7/18/2012
> YOUR INSURED: Elezebeth Varughese
>
> . . . .
>
> CLAIM NO.: 0098409070101148
>
> Dear Claims Department:
>
> Please be advised that Loncar & Associates, P.C. has been retained to represent Susan d [sic] Bobo with regards to her personal injuries and other damages that she sustained in the above-referenced loss.
>
> Susan d [sic] Bobo is in the process of receiving medical treatment; upon completion, I will forward documentation of her injury claim to you for consideration.
>
> Please contact me or my legal assistant, Cindy Nix if you have any questions.
>
> Please provide me with a copy of any statements, written or recorded, that you or any employee of Geico Insurance may have obtained from Susan d [sic] Bobo.
>
> Please acknowledge receipt of this claim. I look forward to working with you towards the resolution of this claim.
>
> . . . .
>
> /s/James M. Bridge
> Attorney at Law

(July 27, 2012, Letter). By letter dated July 30, 2012, Felicia Franklin, an examiner with Geico's claims department, acknowledged receipt of the letter of representation and requested that Loncar & Associates "forward all special damages to [her] attention."

3

Several months later, on December 6, 2012, Bobo's attorney forwarded a letter titled "DEMAND FOR SETTLEMENT" to Franklin, in which he itemized Bobo's past medical expenses, as well as her claims for past physical pain and mental anguish and for future medical expenses (Demand for Settlement). The Demand for Settlement also made a demand for payment. Subsequently, Bobo filed suit, and Varughese filed her original answer on April 30, 2014. On August 19, 2014, Varughese filed her Defendant's Declaration Invoking Offer-of-Settlement Procedure invoking the offer of settlement procedure under Rule 167. *See* TEX. R. CIV. P. 167.2(a). On that same date, Varughese made a settlement offer in which she offered to settle "[a]ll claims asserted by [Bobo] in this matter for $55,000.00, which represents all monetary damages claimed—including attorney fees, costs, and interest that would be recoverable as [sic] the date of this offer—between [Varughese] and [Bobo]" (Rule 167 Settlement Offer). The Rule 167 Settlement Offer also set a September 3, 2014, deadline for acceptance of the offer. *See* TEX. R. CIV. P. 167.2(b)(5); TEX. CIV. PRAC. & REM. CODE ANN. § 42.003(a)(4) (West 2015).[3] Bobo did not accept the Rule 167 Settlement Offer, and it expired by its own terms on September 4, 2014.[4]

The parties went to trial on February 9, 2016, and the jury returned its verdict on February 12, 2016, awarding Bobo $40,358.21 for past physical pain and disfigurement and reasonable medical expenses in the past. Following a hearing on Bobo's motion for judgment, the trial court entered a final judgment in favor of Bobo in the amount of $49,072.28 on March 29, 2016. That amount included court costs of $2,708.49 and prejudgment interest of $6,005.58. In

---

[3]Bobo does not dispute that Varughese's Rule 167 Settlement Offer complied with Section 42.003 and Rule 167.2.

[4]By not accepting the Rule 167 Settlement Offer by its deadline, Bobo was deemed to have rejected the offer. *See* TEX. R. CIV. P. 167.3(c).

its original final judgment, the trial court held that prejudgment interest accrued from January 23, 2013—the 180th day after the July 27, 2012, Letter that provided Varughese written notice of Bobo's claims—to February 12, 2016. The trial court subtracted twenty-nine days of interest for the period of time during which the Rule 167 Settlement Offer was available to be accepted.

Varughese timely filed a motion to modify the trial court's judgment, and the trial court held a hearing on that motion on June 6, 2016. After the hearing, the trial court held that prejudgment interest accrued from June 15, 2013, 180 days after Varughese's receipt of Bobo's Demand for Settlement, through March 28, 2016, the day before it entered its original final judgment, comprising 1,018 days. The parties agreed that prejudgment interest was tolled for a total of 459 days.[5] In its amended final judgment, the trial court found that Bobo was entitled to recover $43,823.13 from Varughese, including damages of $40,358.21, prejudgment interest of $3,091.27,[6] and court costs of $373.65 incurred prior to the expiration of the settlement offer. The trial court also found that Varughese was entitled to recover her litigation costs incurred after the rejection of her settlement offer of $44,857.27 pursuant to Rule 167.4(c), since the judgment was significantly less favorable than the settlement offer. After offsetting the award of Varughese's litigation costs, the trial court entered a take-nothing judgment in favor of Varughese.

---

[5]Varughese made five written offers of settlement, all of which were for amounts greater than Bobo's judgment. Therefore, prejudgment interest did not accrue during the period that these offers could be accepted. *See* TEX. FIN. CODE ANN. §§ 304.105(a), 304.106 (West 2016). The parties agreed that these periods totaled 459 days. Only the Rule 167 Settlement Offer, sent on August 19, 2014, qualified under Rule 167.

[6]Prejudgment interest was calculated at the rate of five percent per annum, giving a daily rate of $5.53, multiplied by 559 days (1,018 total days minus 459 days of tolling), giving a total of $3,091.27.

## II. Identification of the Issues

In her sole point of error, Bobo challenges the trial court's determination that prejudgment interest did not begin accruing until June 15, 2013. She argues that the trial court erred in failing to find that her July 27, 2012, Letter did not constitute a notice of claim, and consequently, in failing to find that prejudgment interest accrued from January 26, 2013. Bobo points to *Bevers v. Soule*, a case decided by the Fort Worth Court of Appeals, to our decision in *K Mart Corp. v. Rhyne*, and to the Eastland Court of Appeals' decision in *National Freight, Inc. v. Snyder*, all of which decided that the letters being considered were sufficient to constitute written notices of claim under Section 304.104 of the Texas Finance Code,[7] or its predecessor statute. *See Bevers v. Soule*, 909 S.W.2d 599, 603 (Tex. App.—Fort Worth 1995, no writ); *K Mart Corp. v. Rhyne*, 932 S.W.2d 140, 145–46 (Tex. App.—Texarkana 1996, no writ); *Nat'l Freight, Inc. v. Snyder*, 191 S.W.3d 416, 428 (Tex. App.—Eastland 2006, no pet.). Bobo argues that the July 27, 2012, Letter, like the letters in those cases, requests the defendant's insurance company to consider her injury claim and "to accept an accrued, existing liability." *Toshiba Machine Co., Am. v. SPM Flow Control, Inc.*, 180 S.W.3d 761, 784 (Tex. App.—Fort Worth 2005, pet. granted, judgm't vacated w.r.m.).

Bobo then argues that both Rule 167 and Section 42.004[8] of the Civil Practice and Remedies Code refer to "the judgment to be awarded" and "the judgment to be rendered,"

---

[7]*See* TEX. FIN. CODE ANN. § 304.104 (West 2016) (providing that "prejudgment interest accrues on the amount of a judgment during the period beginning on the earlier of the 180th day after the date the defendant receives written notice of a claim or the date the suit is filed and ending on the day preceding the date the judgment it rendered").

[8]Rule 167 was adopted pursuant to the specific direction of the Legislature to implement Chapter 42 of the Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM. CODE ANN. § 42.005 (West 2015).

respectively, and not to the jury verdict.  *See* TEX. R. CIV. P. 167.4(a); TEX. CIV. PRAC. & REM. CODE ANN. § 42.004(a).  Therefore, Bobo asserts that prejudgment interest should be included in the Rule 167.4 comparison.[9]  Finally, Bobo concludes that when prejudgment interest is calculated from July 27, 2012, rather than December 6, 2012, the total amount of her judgment was 81.09% of Varughese's Rule 167 Settlement Offer, entitling Bobo to a judgment of $44,597.33.

Varughese argues that under the language of Rule 167, the trial court should not have included any prejudgment interest in making the Rule 167.4 comparison[10] and that, therefore, it is irrelevant whether the trial court correctly calculated prejudgment interest.  Alternatively, she argues that if we find that prejudgment interest should be considered in the Rule 167.4 comparison, then the trial court correctly calculated the prejudgment interest and it was not enough to push Bobo's judgment above the eighty-percent threshold.  Finally, Varughese argues that even if prejudgment interest is included in the judgment amount for the Rule 167.4 comparison, and even if the trial court erred in calculating prejudgment interest, we should nevertheless affirm the judgment by applying the standard used by federal courts in applying the federal offer of judgment

---

[9]Bobo points out that no Texas case has held that prejudgment interest is not included in the judgment amount, or that only prejudgment interest up until the time of the settlement offer is included in the judgment amount, for purposes of Rule 167.4 comparisons.  Although we agree with Bobo that no Texas case has so held, we have found no Texas cases that have directly considered that issue.  Bobo contends that *May v. Ticor Title Ins.*, 422 S.W.3d 93 (Tex. App.—Houston [14th Dist.] 2014, no pet.), held that prejudgment interest is included in the amount of the judgment for the purpose of the Rule 167.4 calculation.  However, *May* did not consider the question of whether prejudgment interest should be considered in the amount of judgment.  Rather, the court of appeals in *May* held that the defendant was entitled to recover its litigation costs since "even if prejudgment interest is included, the trial court's award is still less than 80 percent of the rejected offer."  *Id.* at 104.

[10]Rule 167.4 requires the trial court to compare "the judgment to be awarded on the monetary claims covered by the offer" made under Rule 167.2 to determine whether the judgment award on the monetary claims is "significantly less favorable" than the offer.  *See* TEX. R. CIV. P 167.2(b), 167.4.  We will refer to this comparison as a "Rule 167.4 comparison."

7

provision in Rule 68 of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 68. Under the federal standard, only the prejudgment interest accrued at the time the Rule 167 settlement offer was made should be considered.[11]

We are thus presented with two questions, (1) whether the trial court erred in calculating prejudgment interest and (2) whether prejudgment interest is included in a Rule 167.4 comparison. The determination of either question has the potential of eliminating the necessity to decide the other question. For example, if we determine that the trial court did not err in calculating prejudgment interest, then it does not matter whether prejudgment interest is included in the Rule 167 comparison to resolve this appeal because the amount of prejudgment interest in this case would not push the judgment amount above the eighty-percent threshold. On the other hand, if prejudgment interest is not included in a Rule 167 comparison, then it does not matter whether the trial court correctly calculated the amount of prejudgment interest to resolve this appeal. Consequently, we must first decide which of the two questions to resolve first.

Whether a trial court has correctly calculated prejudgment interest is an issue which has been previously addressed by Texas appellate courts, whereas, the issue of whether prejudgment interest is considered in making a Rule 167 comparison appears to be a case of first impression

---

[11]We note that Varughese did not file a notice of appeal. The Rules of Appellate Procedure require that any party seeking "to alter the trial court's judgment . . . must file a notice of appeal" and that an "appellate court may not grant a party who does not file a notice of appeal more favorable relief than did the trial court except for just cause." TEX. R. APP. P. 25.1(c); *City of Austin v. Whittington*, 384 S.W.3d 766, 789 (Tex. 2012). However, if a party does not seek greater relief than the trial court granted, it is not required to file a notice of appeal. *Whittington*, 384 S.W.3d at 789; *Helton v. R.R. Comm'n of Tex.*, 126 S.W.3d 111, 119–20 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). In this case, Varughese is not seeking to alter the trial court's judgment or seeking greater relief than that granted by the trial court. Rather, she is asserting alternative theories supporting the trial court's take-nothing judgment. Therefore, no notice of appeal was required. *Whittington*, 384 S.W.3d at 789; *Helton*, 126 S.W.3d at 120.

and requires us to construe Rule 167 and Chapter 42 of the Civil Practice and Remedies Code. Accordingly, we will first consider whether the trial court's prejudgment interest calculations were correct. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) ("Courts should think carefully before expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'").[12]

## III.     The Trial Court's Prejudgment Interest Calculations

### A.       Standard of Review

"[P]rejudgment interest accrues on the amount of a judgment during the period beginning on the earlier of the 180th day after the date the defendant receives written notice of a claim or the date the suit is filed and ending on the day preceding the date the judgment is rendered." TEX. FIN. CODE ANN. § 304.104; *Toshiba Machine Co.*, 180 S.W.3d at 784. Under Section 304.104, a claim "is a demand for compensation or an assertion of a right to be paid." *Toshiba Machine Co.*, 180 S.W.3d at 785 (citing *MCN Energy Enters., Inc. v. Omagro de Colombia, L.D.C.*, 98 S.W.3d 766,

---

[12]Varughese's third argument—that we should apply the standard federal courts use in interpreting Rule 68 of the Federal Rules of Civil Procedure and only consider that amount of prejudgment interest accrued as of the date of the offer—could potentially allow us to avoid making a decision on either of the other two questions presented. In other words, we could resolve the case without addressing either question because even if we assume that prejudgment interest is considered in the Rule 167 comparison and even if we find that the trial court erred in calculating the amount of prejudgment interest, the amount of prejudgment interest accrued as of the date of the settlement offer is not sufficient to raise the judgment award above the eighty-percent threshold.

Nevertheless, a settlement offer under Rule 167 includes "attorney fees, interest, and costs that would be recoverable up to the time of the offer." TEX. R. CIV. P. 167.2(b)(4). If we use the federal standard to determine how much prejudgment interest should be included in the Rule 167.4 comparison in this case, we may appear to foreclose the question of whether the federal standard should be applied to Rule 167.4 comparisons turning on the amount of attorney fees, court costs, or other types of interest in future cases. Since these issues are not before us, we will first consider whether the trial court erred in making the prejudgment interest calculations, and if so, then determine whether prejudgment interest should be considered in making a Rule 167.4 comparison in order to eliminate the greatest number of unnecessary issues.

773 (Tex. App.—Fort Worth 2003, pet. denied)). However, it is not necessary that a claim demand a certain amount or detail the elements of damage. *Id.* (citing *Bevers*, 909 S.W.2d at 603).

When we review an award of prejudgment interest, we use an abuse-of-discretion standard regarding the trial court's factual findings. *Id.* However, we review de novo the trial court's determination of the law and its application of the law to the facts. *Id.* In this case, the existence and the contents of the July 27, 2012, Letter are not in dispute. Rather, Bobo challenges the trial court's implied finding that the letter did not constitute notice of her claim. Therefore, we review de novo this prejudgment interest issue. *See id.* at 785–86.

**B.    Application**

The Fort Worth Court of Appeals has previously held that a letter similar to the July 27, 2012, Letter constituted a notice of claim. In *Bevers*, the Plaintiff sent a letter to a claims specialist at State Farm Mutual Insurance Company. *Bevers*, 909 S.W.2d at 603. After referencing the claim number and State Farm's insured, Bevers, the body of the letter stated:

> I enclose for your files one (1) signed copy of the "Authorization" you sent me so that you could obtain the necessary information to properly consider my injury claim.
>
> I also enclose for your processing copies of some of the medical receipts relative to my injury. As you will note, I am now seeing an orthopedist, Juan J. Capello, M.D. I am about to start a program of physical therapy.
>
> Should you require any additional information, please let me know. My office number is [number listed].
>
> Sincerely,
> /s/ Ronald B. Soule

10

*Id.* The court of appeals noted that "[n]othing in [Section 304.104's predecessor statute] requires the claimant to demand an exact amount or list every element of damage claimed in order to trigger the notice of claim provision." *Id.* (citing *Robinson v. Brice*, 894 S.W.2d 525, 528 (Tex. App.—Austin 1995, writ denied)). It then held that the trial court did not err in holding that the prejudgment interest statute "was triggered by [the Plaintiff's] letter and the signed medical authorization." *Id.*

The *Bevers* decision has subsequently been cited with favor by the Fort Worth Court of Appeals and other courts of appeals. *See Snyder*, 191 S.W.3d at 428 (relying on *Bevers* in holding that letter from claimant's attorney to insurance claims adjustor referencing claimant's bodily injuries constituted notice of claim under Section 304.104); *Toshiba Machine*, 180 S.W.3d at 786 (looking to *Bevers* for guidance and noting the court held that the medical authorization, coupled with the letter asking the insurance company to consider the injury claim, "constituted notice"); *Rhyne*, 932 S.W.2d at 145–46 (same).

As in *Bevers*, the July 27, 2012, Letter was sent to Geico's claims department and referenced both Geico's insured, Varughese, and its claim number. In addition, it referenced Bobo and the personal injuries and other damages she sustained in the referenced loss. It also notified Geico that Bobo was receiving medical treatment and promised to send documentation of her injury claim for its consideration. This is similar to *Bevers*, where the medical authorization was provided to enable the insurance company to consider the claimant's injury claim.

Nevertheless, Varughese argues that we are bound by the Fort Worth Court's decision in *Toshiba Machine*. However, *Toshiba Machine* is distinguishable on its facts. In that case, S.P.M.

11

Flow Control, Inc. ("SPM") purchased machine tools from Toshiba based on Toshiba's representations that it would perform the specific functions needed by SPM. *Toshiba Machine*, 180 S.W.3d at 768–69. When the machines would not perform the functions, SPM sent a letter to Toshiba notifying it that the machines would not perform to specifications, summarizing its twenty-one complaints about the machines, stating that it had incurred damages of $998,250.00, and stating that it continued to incur damages at the rate of $5,775.00 per day. *Id.* at 786. However, SPM concluded its letter as follows:

> SPM is prepared to litigate the issues if necessary. However, SPM prefers to resolve the issues if the machines can perform to specification and contract requirements. If this is not attainable, SPM prefers to return the machines to Toshiba, with Toshiba to absorb SPM's costs-to-date.

*Id.*

After SPM obtained a judgment against Toshiba, SPM cross-appealed, asserting that its letter to Toshiba constituted a notice of claim under Section 304.104. *Id.* at 784. The court of appeals distinguished the letter in that case from the letter in *Bevers* finding that SPM's letter "did not urge the recipient[] to avoid a contingent, future liability, but to accept an accrued, existing liability." *Id.* The court noted that SPM's letter, by contrast, "urge[d] Toshiba to avoid a future claim by curing the defects in the . . . machines" and did "not demand payment or assert a right to be paid." *Id.* Rather, according to the court, SPM merely suggested that it would assert a claim in the future, contingent on Toshiba's inability to make the machines perform to specification. *Id.*

In this case, as in *Bevers*, the letter asserted an accrued, existing liability. Although both letters indicate that not all of the damages had been determined at the time of the letter, that is not required to constitute a notice of claim. *See Snyder*, 191 S.W.3d at 428 (letter promised to send

medical specials when client released from treatment); *Brookshire Grocery Co. v. Smith*, 99 S.W.3d 819, 824 (Tex. App.—Beaumont 2003, pet. denied) (letters constituting notice of claim informed insurance adjuster of procedures contemplated by claimant's doctor); *Bevers*, 909 S.W.2d at 603 (letter noted claimant was seeing an orthopedist and beginning physical therapy). Therefore, we hold that the July 27, 2012, Letter constituted a written notice of claim under Section 304.104.

## IV. The Trial Court's Error Does Not Require Reversal of the Judgment

### A. Introduction and Standard of Review

Having determined that the trial court erred in calculating the amount of prejudgment interest due on the judgment, we must determine whether such error is reversible. To do so, we must determine whether prejudgment interest is included in the Rule 167.4 comparison. If it is not, then any error by the trial court would be harmless.[13] This determination requires us to interpret Rule 167.

In construing a procedural rule, "we apply the same rules of construction that govern the interpretation of statutes." *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 579 (Tex. 2012) (citing *In re Christus Spohn Hosp. Kleberg*, 222 S.W.3d 434, 437 (Tex. 2007) (orig. proceeding)). As

---

[13]The parties agree that prejudgment interest accrued at the rate of $5.53 per day. Since the July 27, 2012, Letter constituted a notice of claim, then prejudgment interest would begin to accrue 180 days after Geico acknowledged receipt of the letter. Under Bobo's calculation, this would be January 26, 2013. The date of the Rule 167 Settlement Offer was August 19, 2014. The number of days between January 26, 2013, and August 19, 2014, is 570. The parties agreed that the accrual of prejudgment interest was tolled for a total of 276 days because of other settlement offers exceeding Bobo's judgment during this time period. This means only 294 days of prejudgment interest had accrued at the time the Rule 167 Settlement Offer was made, for a total of $1,625.82 (294 days x $5.53). Subtracting that amount from the Rule 167 Settlement Offer makes that offer a total of $53,374.18. Adding the amount of damages awarded by the jury and the costs of court accrued at that time, and not including prejudgment interest, gives a total judgment of $40,731.77 ($40,358.21 + 373.65), which is 76.31 percent of the Rule 167 Settlement Offer.

13

with the interpretation of statutes, we primarily seek to determine, and give effect to, the rule enactors' intent. *Note Inv. Grp.*, 476 S.W.3d at 476. We examine the entire rule and give effect to each word, clause, and sentence. *Id.* (citing *Tex. Adjutant Gen.'s Office v. Ngakoue*, 408 S.W.3d 350, 354 (Tex. 2013)). We look to the plain language of the rule and apply its plain meaning, "unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *In re Ford Motor Co.*, 442 S.W.3d 265, 280 (Tex. 2014) (orig. proceeding) (quoting *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011)). Further, regardless of whether the rule is ambiguous or not, we may consider the "object sought to be attained" by the rule, the "circumstances under which [it] was enacted," and the "consequences of a particular construction" of the rule. TEX. GOV'T CODE ANN. § 311.023(1), (2), (5) (West 2013); *Note Inv. Grp.*, 476 S.W.3d at 476; *see also* TEX. GOV'T CODE ANN. § 311.002(4) (West 2013) (providing that the Code Construction Act is applicable to rules adopted under a code).

### B. Legislative History and Intent of Rule 167

Rule 167 had its genesis in Chapter 42 of the Civil Practice and Remedies Code, which was part of the tort reform legislation passed by the Legislature in 2003. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 42.001–.005 (West 2015). As our sister court of appeals has noted,

> In 2003, our legislature determined that our state faced "a general environment of excessive litigation." House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 4, 78th Leg., R.S., at 1 (2003) [hereinafter *Analysis*]. Reformers in the legislature argued that the civil justice system should provide appropriate incentives to litigants to avoid unnecessary expense and shorten the time lawsuits stay in the system. Michael S. Hull, et al., *Part Two: Detailed Analysis of the Civil Justice Reforms*, 36 TEX. TECH L. REV. 51, 66 (2005) . . . . They also contended that some lawsuits unnecessarily involved lengthy discovery and pretrial maneuvering because one or both parties failed to realistically evaluate the lawsuit early in the litigation process to determine the possibility of settlement. *Id.*

14

> One legislative solution to this crisis was to reduce the cost of litigation through cost shifting of litigation costs in some cases. *Analysis*, *supra*, at 1.

*In re CompleteRx, Ltd.*, 366 S.W.3d 318, 321–22 (Tex. App.—Tyler 2012, orig. proceeding). To accomplish this goal, the Legislature included Chapter 42 of the Civil Practice and Remedies Code as part of House Bill 4. *Id.* at 322. Section 42.004 provides for cost shifting in some cases through an offer of settlement mechanism:

> (a)　　If a settlement offer is made and rejected and the judgment to be rendered will be significantly less favorable to the rejecting party than was the settlement offer, the offering party shall recover litigation costs from the rejecting party.
>
> (b)　　A judgment will be significantly less favorable to the rejecting party than is the settlement offer if:
>
> > (1)　　the rejecting party is a claimant and the award will be less than 80 percent of the rejected offer; or
> >
> > (2)　　the rejecting party is a defendant and the award will be more than 120 percent of the rejected offer.
>
> (c)　　The litigation costs that may be recovered by the offering party under this section are limited to those litigation costs incurred by the offering party after the date the rejecting party rejected the settlement offer.

TEX. CIV. PRAC. & REM. CODE ANN. § 42.004(a)–(c). Section 42.004 "was designed to provide an incentive for litigants to make and accept reasonable settlement offers early." *CompleteRx, Ltd.*, 366 S.W.3d at 322 (citing *Hull*, 36 TEX. TECH L. REV. at 1; Professor Elaine Carlson, *Offer of Settlement*, STATE BAR OF TEX. LITIGATION SECTION REPORT 6 (Fall 2003)).

In addition, the Legislature directed the Supreme Court to promulgate rules implementing Chapter 42's offer of settlement mechanism. TEX. CIV. PRAC. & REM. CODE ANN. § 42.005;

15

*CompleteRx, Ltd.*, 366 S.W.3d at 322. In response, the Supreme Court adopted Rule 167, which provides comprehensive procedural details implementing the offer of settlement process and cost-shifting contemplated by the Legislature. Rule 167.1 provides that "[c]ertain litigation costs may be awarded against a party who rejects an offer made substantially in accordance with this rule to settle a claim for monetary damages - including a counterclaim, crossclaim, or third-party claim," with certain exceptions not applicable to this case. TEX. R. CIV. P. 167.1. Thus, the cost-shifting purpose of the rule is made evident at the outset. Rule 167.2 provides the procedure for making a qualifying settlement offer. It states, in pertinent part:

> (b)     *Requirements of an offer.* A settlement offer must:
>
> (1)     be in writing;
>
> (2)     state that it is made under Rule 167 and Chapter 42 of the Texas Civil Practice and Remedies Code;
>
> (3)     identify the party or parties making the offer and the party or parties to whom the offer is made;
>
> (4)     state the terms by which all monetary claims - including any attorney fees, interest, and costs that would be recoverable up to the time of the offer - between the offeror or offerors on the one hand and the offeree or offerees on the other may be settled;
>
> (5)     state a deadline - no sooner than 14 days after the offer is served - by which the offer must be accepted;
>
> (6)     be served on all parties to whom the offer is made.

TEX. R. CIV. P. 167.2(b).

Rule 167.4 provides, in part:

> (a)     *Generally*. If a settlement offer made under this rule is rejected, and the judgment to be awarded on the monetary claims covered by the offer is

significantly less favorable to the offeree than was the offer, the court must award the offeror litigation costs against the offeree from the time the offer was rejected to the time of judgment.

    (b)    *"Significantly less favorable" defined*. A judgment award on monetary claims is significantly less favorable than an offer to settle those claims if:

        (1)    the offeree is a claimant and the judgment would be less than 80 percent of the offer; or

        (2)    the offeree is a defendant and the judgment would be more than 120 percent of the offer.

TEX. R. CIV. P. 167.4(a), (b). Neither Chapter 42 nor Rule 167 define "award," "judgment," "judgment award," or "monetary claims." Also, Rule 167 does not define "interest" as used in Rule 167.2. Neither party has directed us to any cases, nor have we located any, that interpret these terms as they are used in Rule 167.

## C.    Analysis

Initially, we note that Section 42.004, in defining when "a *judgment* will be significantly less favorable" than the settlement offer rejected by the rejecting party, provides that it is when "the *award* will be less than 80 percent of the rejected offer," if the rejecting party is a claimant, and when "the *award* will be more than 120 percent of the rejected offer," if the rejecting party is a defendant. TEX. CIV. PRAC. & REM. CODE ANN. § 42.004(b)(1), (2) (emphasis added). Although "award" is not defined in Chapter 42, or elsewhere in the Civil Practice and Remedies Code, when "award" is used in that Code and elsewhere, it is used in reference to certain types of damages awarded by a fact-finder, not to the final judgment entered by a trial court. *See, e.g.*, TEX. CIV. PRAC. & REM. CODE ANN. § 41.010(a) (West 2015) (noting the factors the trier of fact should

17

consider "[b]efore making an *award* of exemplary damages" (emphasis added)), § 71.010(a) (West 2008) ("The jury may *award* damages in an amount proportionate to the injury" (emphasis added)); TEX. FIN. CODE ANN. § 304.1045 ("Prejudgment interest may not be assessed or recovered on an *award* of future damages." (emphasis added)). Thus, it appears that the Legislature intended "award" in Section 42.004 to mean the damages awarded by the fact-finder, rather than the final judgment rendered by the trial court.

Rule 167.4, on the other hand, provides that "[a] *judgment award* on monetary claims is significantly less favorable than an offer to settle those claims if . . . . the *judgment* would be less than 80 percent of the offer" when the offeree is the claimant, and if "the *judgment* would be more than 120 percent of the offer" when the offeree is the defendant. TEX. R. CIV. P. 167.4(b)(1), (2) (emphasis added). As we noted earlier, Rule 167 was promulgated at the direction of the Legislature and for the express purpose of implementing Chapter 42. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 42.005. Yet, there is nothing in Section 42.005 that authorizes the Supreme Court to change the meaning or intent of the words used in Chapter 42, nor is there any indication that the Supreme Court intended to do so.

Since Rule 167.4 implements Section 42.004, the Supreme Court's use of "judgment" for comparison with the offer, then, has the same meaning as the Legislature intended when it used "award" in Section 42.004. As seen above, the Legislature appears to equate "award" in Section 42.004 to the damages awarded by the fact-finder. Therefore, it appears that "judgment," as used in Rule 167.4(b)(1) and (2), means the damages awarded by the fact-finder, rather than the final judgment rendered by the trial court. This being the case, we find that prejudgment interest should

not be included in the "judgment" when comparing it with the settlement offer under Rule 167.4(b)(1) and (2).[14]

This interpretation is consistent with the objective sought to be attained by Rule 167 and Chapter 42. As noted earlier, the statute and the rule were promulgated to encourage parties to realistically evaluate their lawsuit early in the litigation process in order to encourage settlements and avoid the high cost of litigation and unnecessary expense. If prejudgment interest, which accrues the longer the case takes to get to trial and in some cases can be quite significant, is included in the amount of the judgment compared with the settlement offer, it can be a disincentive to settlement. Consequently, we find that prejudgment interest is not considered when comparing "the judgment award on monetary claims" to "an offer to settle those claims" under Rule 167.4(b).

## V.    Conclusion

We find that the trial court incorrectly calculated the amount of prejudgment interest in this case. Nevertheless, we find that the amount of prejudgment interest is not relevant to a Rule

---

[14]As Varughese points out, some courts have made the Rule 167.4 comparison without including prejudgment interest and costs in the amount of the judgment. *See Compass Bank v. Nacim*, 459 S.W.3d 95, 110 (Tex. App.—El Paso 2015, no pet.); *Huston v. United Parcel Serv., Inc*., 434 S.W.3d 630, 636 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). However, whether prejudgment interest should be included in the amount of the judgment does not appear to have been an issue in either of those cases.

167.4(a) comparison.  Accordingly, the trial court was correct to offset the two amounts and enter

a take-nothing judgment in favor of Varughese.  We overrule Bobo's point of error.

We affirm the trial court's judgment.


Ralph K. Burgess
Justice


Date Submitted:    October 20, 2016
Date Decided:      December 9, 2016