In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

## NO. 09-22-00321-CV
_____

## FARMERS TEXAS COUNTY MUTUAL INSURANCE CO.,
Appellant

## V.

## FLOYD BARR, Appellee

On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 20-06-07141-CV

## MEMORANDUM OPINION

In *Bocquet v. Herring*, the Supreme Court of Texas held that the Declaratory Judgements Act provided the statutory authorization required to support an award of attorney's fees to the plaintiffs who had prevailed in a declaratory judgment action against the insurance company that covered their vehicle and that denied their claim seeking

1

damages under the underinsured motorist (UIM) coverage of their policy.[1] Under the Declaratory Judgments Act (UDJA), a trial court's award of attorney fees is committed to the trial court's sound discretion, subject to the requirements that the fees that are awarded are reasonable, necessary, equitable and just.[2]

Farmers Texas County Mutual Insurance Company (Farmers) appeals from a judgment in which the trial court awarded Floyd Barr, among other things, $50,000 in attorney's fees for the services of Barr's attorney through the trial. Farmers raises one issue in the appeal and complains that "the trial court erred by not applying concepts of fairness given all the circumstances when it awarded attorney's fees in this UIM case [because it awarded fees] that are not equitable and just." For the reasons more fully explained below, we are not persuaded that Farmers has shown the trial court's award constitutes an abuse of discretion based on its argument that the award is not equitable and just.

---

[1]*Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); Tex. Civ. Prac. & Rem. Code Ann. § 37.009.

[2]Tex. Civ. Prac. & Rem. Code Ann. § 37.009.

## Background

After Barr settled the personal injury claim he had against Pope for $30,000 with the insurance company that insured Pope's vehicle, Farmers paid Barr $10,000 under the Personal Injury Protection (PIP) coverage of Barr's auto policy with Farmers.[3] Claiming that he had suffered more than $40,000 in damages in the collision with Pope, Barr filed an underinsured motorist claim under his auto policy with Farmers. Farmers and Barr were subsequently unable to resolve the UIM claim for the gap that Barr alleged existed between the damages Pope caused in the wreck and the $40,000 that Barr had received in total insurance benefits after the wreck—$30,000 paid by the liability insurance carrier for Pope and $10,000 paid by Farmers under the PIP provisions of Barr's policy.

In June 2020, Barr sued Farmers on a direct-action UIM claim. In the trial court and here, the parties do not dispute that Barr is covered by the policy that Farmers issued to Barr and that the policy includes UIM coverage. Nor is there any dispute that Farmers was entitled to a

---

[3]No one disputes that Farmers gave Barr permission to settle his claims against Pope.

credit of $40,000 against any UIM recovery that Barr might ultimately obtain in his direct-action UIM claim against Farmers. In Barr's direct-action lawsuit against Farmers, Barr sought a determination under the UDJA of his damages from his wreck with Pope, a declaration that the damages fell within the coverage afforded him under his auto policy, and attorney's fees.

In July 2020, Farmers answered and after that, the parties engaged in discovery for over a year. On December 7, 2021, Farmers offered to settle with Barr for $100,000. The written offer of settlement isn't in the record, but we assume Farmers offered to settle Barr's entire UIM claim in return for a full release. Barr rejected Farmers' offer the day the offer was made. That said, no evidence in the record reveals whether a portion of Farmers' offer included some amount to account for Farmers' exposure to the award of attorney's fees that Farmers had to Barr on Barr's direct-action UIM claim under the UDJA, since even if attorney's fees are not part of the damages that Barr could have recovered in a lawsuit against Pope, under the UDJA trial courts are authorized to award attorney's

fees on claims on which attorney's fees may be recovered under the UDJA.[4]

Barr filed claims against Farmers based on the underinsured motorist portion of his auto policy, claims arising from the rear-end automobile collision that he had with Pope on October 12, 2018. With Farmers' permission, Barr and Pope's insurance carrier settled the claims Barr had against Pope for $30,000. Shortly after that, Barr then sued Farmers and sought to recover on his claim under the UIM coverage of his auto policy with Farmers.

In his petition, Barr sought declaratory relief under Chapter 37 of the Texas Civil Practice and Remedies Code.[5] In seeking declaratory relief, Barr asked for findings declaring that: (1) Curtis Pope's negligence proximately caused the wreck; (2) Pope was underinsured; and (3) Barr was entitled to recover damages from Farmers that resulted from the

---

[4]*See Allstate v. Irwin*, 627 S.W.3d 263, 269-272 (Tex. 2021) (in a case involving a direct-action UIM claim brought under the UDJA (Civil Practice and Remedies Code Chapter 37), explaining that the UDJA provides the statutory authorization required to award attorney's fees and holding that the trial court did not abuse its discretion by awarding attorney's fees).

[5]Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (the Uniform Declaratory Judgments Act).

collision that fell within the coverage afforded under his policy, "specifying the amount of damages, interest and court costs that Defendant FARMERS is obligated to pay." In addition, Barr's petition alleges that he was seeking to recover attorney's fees "as authorized by Chapter 37 of the Texas Civil Practice and Remedies Code[.]"[6] The UIM coverage under Barr's policy with Farmers shows Barr's UIM coverage was limited to a maximum amount per occurrence of $500,000.

The parties agreed to bifurcate Barr's case into two phases, the first of which was to be conducted before a jury so the jury could determine whether Pope was negligent and if so, the amounts Barr was entitled to recover in damages against Pope for the personal injuries and property damages that the accident with Pope caused. The jury phase of the bifurcated proceeding lasted three days. When that phase of the trial concluded, the jury found: (1) that Pope was negligent and that his negligence proximately caused the occurrence; and (2) that Barr suffered various damages which, when added together, totaled $115,000. As Farmers sees it, after accounting for the $30,000 settlement credit from

---

[6]*See id*. § 37.009 ("In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just.").

Barr's settlement with Pope and for the $10,000 paid under Barr's Farmers policy's coverage for PIP, "the jury verdict resulted in only $75,000 in UIM benefits (aka 'new money')."

The trial of Barr's UDJA claim for attorney's fees occurred on July 28, 2022, and took one day. Two witnesses testified in the trial: (1) Patrick Scott, the attorney who represented Barr; and (2) Greg Wilkins, an attorney who testified as an expert on attorney's fees for Farmers. Scott testified that he graduated from law school in 2010 and is licensed to practice law in three states, including Texas. Scott explained that since graduating from law school, he has primarily handled personal injury cases, and he said he began handling personal injury cases in 2011 when he went to work for a firm that did personal injury work. Scott testified that currently, ninety-nine percent of his firm's cases are personal injury cases or cases involving first-party insurance disputes.

Based on itemized billing records that were admitted into evidence without objection, Scott testified the total amount of attorney time that he and another attorney had spent through the trial totaled 254.25 hours. Scott explained that the hourly rate that he and the other attorney who worked on the file had charged for their time was $350 per hour, which

7

resulted in a "total amount of itemized attorney's fees in Exhibit 1 [of] $88,987.50." When asked for his opinion about whether the fees in Exhibit 1 were "reasonable and necessary for [Barr's] case," Scott answered: "Yes."

Greg Wilkins testified as an expert on attorney's fees for Farmers. Wilkins concluded that under the *Arthur Andersen* factors, $350 per hour is excessive for the type and complexity of the case that was prosecuted and is outside the realm of what would be reasonable and customarily charged and paid in Montgomery County for the same or similar services.[7] Instead, Wilkins said that in his opinion a reasonable and customary hourly rate for a UIM case would range from $145 an hour at

---

[7]*See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). The factors that a factfinder should consider when determining the reasonableness of attorney's fees include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood…that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on the results obtained and the uncertainty of collection before the legal services have been rendered. *Id.*

the low end to $250 an hour on the high end, with a median of $190 an hour. According to Wilkins, $49,680.00 to $50,000.00 would "be what should be expected many, many, many, many more times than not." Still, Wilkins noted that in addition to the reasonable and necessary requirement under the UDJA, a fee must also be equitable and just. So Wilkins stated that in his opinion it was up to the trial court as the factfinder and with knowledge of the result that the attorney had obtained in the jury phase of the trial to determine "whether there's an equity to shift responsibility for fees . . . from the plaintiff over to the defendant." For that reason, Wilkins said that from his viewpoint, $50,000 in attorney's fees would be an amount that would be "your ceiling" on the award of fees.

Following the trial, Famers asked the trial court to provide the parties with its findings of fact and conclusions of law. In its brief, Farmers did not level any specific challenges to any of the trial court's findings, including the finding that "143 hours" of the 254.25 hours Scott worked were "reasonable and necessary." It also did not challenge the trial court's finding that "those hours are reasonable and were necessarily incurred under" the test that applies to determine the

9

reasonableness and necessity of a trial court's award of fees. Moreover, while Wilkins disagreed with Scott about what amount represented a reasonable hourly rate for this case, in its appeal Farmers did not challenge the trial court's finding that $350 per hour for the work that Scott and the other attorney who worked on the file charged was a reasonable hourly rate in Montgomery County.

The trial court's final judgment awards damages against Farmers tied to Barr's UIM claim that total $131,464. This figure represents $50,000 in attorney's fees under the UDJA, plus $75,000 that Barr would have presumably recovered against Pope had Pope been fully insured for the damages that Pope caused in the wreck, plus prejudgment interest on a portion of the $75,000 award to account for the portion of the jury's award that was for Barr's past damages. The prejudgment interest awarded added an additional $6,465 to the final judgment.[8] In addition to the $131,464 award, the trial court's judgment includes conditional awards of attorney's fees for appeals. Farmers, however, did not

---

[8]For simplicity, we have rounded all monetary figures to whole numbers.

10

challenge the conditional attorney's fee awards in its appeal, so those awards are not discussed in the appeal.

Standard of Review and Applicable Law

Under the UDJA, "the court may award costs and reasonable and necessary attorney's fees as are equitable and just."[9] Generally, appellate courts review a party's issue challenging the "reasonable and necessary" requirement for attorney's fee awards under the UDJA as presenting questions of fact.[10] That said, in UDJA cases, the attorney's fee awards must not only be reasonable and necessary but trial courts must assure the awards are "equitable and just."[11]

In its brief, Farmers hasn't challenged the trial court's findings in Barr's case that $350 an hour for the work the attorneys performed on Barr's case was a reasonable hourly rate for their work. Farmers also has not challenged the trial court's finding that 143 hours of the time that the attorneys billed for their work on Barr's case was reasonably and necessarily incurred to prosecute Barr's direct action UIM claims against

---

[9]Tex. Civ. Prac. & Rem. Code Ann. § 37.009.
[10]*See Bocquet*, 972 S.W.2d at 21; *Dean v. Mitchell*, No. 09-21-00267-CV, 2023 WL 631683, at *11 (Tex. App.—Beaumont June 29, 2023, no pet.) (mem. op.).
[11]Tex. Civ. Prac. & Rem. Code Ann. § 37. 009.

Farmers. Instead, Farmers argues that the attorney's fee award of $50,000 was not "equitable and just" because Barr could have settled six months before trial for what Farmers contends would have been a more favorable result than he obtained in the trial. Farmers also claims the award is inequitable and unjust because Barr never gave Farmers the chance to settle and instead demanded that it pay him the full UIM benefits of $500,000, which forced the case to trial.

Under the UDJA, a trial court has broad discretion in determining whether to award fees.[12] In reviewing an attorney's fee award under the UDJA, we will reverse the trial court's award "only if the lower court abused its discretion by (1) awarding fees when there was insufficient evidence to support a finding that the fees were reasonable and necessary, or by (2) acting arbitrarily, unreasonably, or without regard to guiding legal principles in determining that the fees the trial court awarded were equitable and just."[13]

---

[12]*Dean,* 2023 WL 631683, at \*13; *Forest Hills Improvement Ass'n, Inc. v. Flaim,* No. 09-18-00199-CV, 2019 WL 4493325, at \*2 (Tex. App.—Beaumont Sept. 19, 2019, no pet.) (mem. op.).

[13]*Dean,* 2023 WL 631683, at \*13 (quoting *Merzi v. Brumfield,* No. 09-21-00340-CV, 2023 WL 4113242, at \*8 (Tex. App.—Beaumont June 22, 2023, no pet.) (mem. op.)).

Under the UDJA, a trial court's discretion is such that even when the attorney's fees the prevailing party incurred are reasonable and necessary, the trial court may still conclude that, as a matter of fairness given all the circumstances, it is not equitable or just to award them.[14] On appeal, Farmers bears the burden to establish that the record shows the trial court abused its discretion on its claim that the trial court awarded a fee that is not "equitable and just."[15]

Discussion

Farmers argues the trial court abused its discretion because the record established that (1) the award of $50,000 in attorney's fees is unjust because it rewards Barr for prolonging the litigation; (2) the award is unjust because Barr rejected a settlement offer six months before trial, which ended up being a more favorable offer had it been accepted than the result he obtained in the trial; and (3) the award is unjust because it includes attorney's fees that Barr incurred after Barr rejected the offer Farmers made six months before trial. Farmers asks that this Court "establish guiding principles" for courts to follow so parties don't face

---

[14]*Ridge Oil Co., Inc. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 162 (Tex. 2004); *Bocquet*, 972 S.W.2d at 21.
[15]*Dean*, 2023 WL 631683, at *13.

13

what it characterizes as the "arbitrary [] exercise [by trial courts] of their discretion" in awarding attorney's fees under the UDJA.

These rules already exist.[16] All Farmers had to do to have them apply was to invoke them in Barr's case. Rule 167, which includes exceptions that are not relevant to UIM claims, provides that "certain litigation costs may be awarded against a party who rejects an offer made substantially in accordance with this rule to settle a claim for monetary damages – including a counterclaim, crossclaim, or third-party claim."[17] Under Rule 167,

> "litigation costs" include "reasonable attorney's fees," and the rules provide that if a settlement offer is made under the requirements that apply after a party invokes the rule and the offer is rejected and the "judgment to be awarded on the monetary claims covered by the offer is significantly less favorable to the offeree than was the offer, the court must award the offeror litigation costs against the offeree from the time the offer was reject to the time of judgment."[18]

---

[16]*See* Tex. R. Civ. P. 167.1-7 (Offer of Settlement; Award of Litigation Costs); Tex. Civ. Prac. & Rem. Code Ann. §§ 42.001-.005 (Settlement).
[17]Tex. R. Civ. P. 167.1.
[18]*Id.* 167.4(a), (c).

But to make Rule 167 applicable in a case, a party must invoke it by filing "a declaration invoking this rule."[19] Farmers makes no claim that it invoked the requirements of Rule 167 in Barr's case.

The settlement procedures in Chapter 42 of the Civil Practice and Remedies Code provide a similar cost-shifting procedure, which also permits a defendant to protect itself from the exposure it might otherwise face to a plaintiff for what the defendant perceives as unreasonably rejecting a reasonable settlement offer and then failing to achieve a significantly more favorable result in the trial.[20] Still, like Rule 167, Chapter 42 must be invoked by a party for the statute's fee shifting provisions to apply, and all a party must do to invoke the statute is file "a declaration that the settlement procedure allowed by this chapter is available in the action."[21] Nothing in the record shows that Farmers invoked the settlement procedures in Chapter 42 in Barr's case.

As the judge who presided over the jury phase of Barr's trial, the trial court could have viewed Barr's decision to reject the offer Farmers made to Barr in December 2021 as reasonable under all the

---

[19]*Id.* 167.2(a).
[20]Tex. Civ. Prac. & Rem. Code Ann. § 42.003-.004
[21]*Id.* 42.002(c).

circumstances when the outcome of the case was unknown to both parties. For example, in its brief, Farmers acknowledges that when Farmers made its offer, Barr's attorney had around 70 hours of time "on the litigation (x 350/hr.=$24,500)."[22]

The invoice from Scott's firm doesn't include the expenses the firm incurred in the case for acquiring records and taking depositions, but the firm's invoices show five depositions were taken in the case before the mediation occurred, including the depositions of two doctors. Moreover, during the bench trial, Scott testified that under his firm's agreement with Barr, the case was being handled on a 40 percent contingency fee if the case were to settle before trial. Thus, when the trial court was considering whether it was reasonable for Barr to have rejected Farmers offer, it could have reasonably considered what Barr would have netted after accounting for the 40% contingency fee and expenses. The trial court could have also considered that Farmers could have, but did not, invoke the procedures available under Rule 167 and Chapter 42 if in fact

---

[22]Scott's firm's itemized time records show that including the day the parties attended mediation, which the testimony in the bench trial shows is the day Farmers extended the offer, Scott's firm had 69.96 hours of time in the case.

Farmers had been as confident as it now claims Barr should have been in guessing how favorable its settlement offer was before knowing the outcome of the trial.[23]

Here, net of the settlement credits applicable to Barr's UIM claim and the prejudgment interest on the portion of the past damages of the jury's award on Barr's UIM claim included in the trial court's judgment ($6,464), the jury's award (not including the attorney's fees awarded by the trial court on the UDJA portion of the suit) on Barr's UIM claim was $75,000.[24] That amount represents seventy-five percent of Farmers' $100,000 offer if the attorney's fees the trial court awarded under the UDJA are excluded from the award in the calculations required by Rule 167 and Chapter 42 to calculate whether Barr received a "significantly less favorable" judgment on his monetary award under Rule 167 or Chapter 42. In reaching its conclusion that Barr achieved a less favorable result from the trial than he would have achieved in a settlement, Farmers doesn't separate the settlement value of Barr's claim under his

---

[23]*Id.* § 42.004(b)(1).

[24]*See Bebo v. Varughese*, 507 S.W.3d 817, 829 (Tex. App.—Texarkana 2016, no pet.) (holding that "prejudgment interest is not considered when comparing 'the judgment award on monetary claim' to 'an offer to settle those claims' under Rule 167.49(b)").

policy for UIM benefits and the settlement value of disposing of Barr's claim for the year and a half it took Barr to get Farmers to make an offer to settle the case. The record also doesn't include an exhibit that contains the terms of Farmers' offer, but we assume any settlement offer Farmers made would have required Barr to release his claim against Farmers for attorney's fees.

Neither Rule 167 or Chapter 42 make it clear whether the attorney's fees available to a plaintiff who prevails on a UIM claim are to be considered part of a UIM "award" in calculating whether a "judgment award on monetary claims" is "significantly less favorable" than the defendant's offer.[25] The term *award* isn't defined in Chapter 42 even though it is one of the figures used to calculate whether a claimant's rejection of a settlement offer triggers whether "litigation costs" should be shifted to the claimant.[26] Still, if the attorney's fees Barr incurred through mediation are valued at $350 per hour and if the trial court

[25]Tex. R. Civ. P. 167.4(b)(1); Tex. Civ. Prac. & Rem. Code Ann. § 42.004(b)(2).

[26]*See* Tex. Civ. Prac. & Rem. Code Ann. § 42.001(defining several terms, but not the term *award*); *id*. § 42.004(b) (requiring the trial court to award "litigation costs" to the party that made the offer when "the rejecting party is a claimant and the award will be less than 80 percent of the rejected offer").

considered them in its calculation of whether it was "equitable and just" to shift the burden of Barr's attorney's fees based on the results he achieved in the jury phase of the case, the fee-shifting provisions in both Rule 167 and Chapter 42 would not be triggered because no practical variance exists between Farmers' offer ($100,000) and the results of the trial ($75,000) plus the approximately $24,500 in attorney's fees that Barr incurred at a rate of $350 per hour (which Farmers did not contest as unreasonable) for 70 hours of time (which Farmers did not contest as unreasonable) to the date that Barr rejected Farmers' offer.[27]

The Texas Supreme Court has held that attorney's fees are recoverable by a plaintiff who prevails in a direct-action UIM case against his insurance carrier under the UDJA.[28] In our opinion, the trial court was not bound by the eighty percent fee-shifting threshold in Rule 167 or Chapter 42. Farmers did not invoke those provisions, leaving the trial court free to exercise its discretion when deciding whether the plaintiff had acted reasonably in rejecting Farmers' $100,000 offer. The trial court

---

[27]$99,500 = $75,000 net of settlement credits plus $24,500 in attorney's fees if the fees were based on the hourly rate the trial court found reasonable and the time shown in the itemized time records through December 7, 2021, the date the offer was made.

[28]*Irwin*, 627 S.W.3d at 271-72.

was also free to consider whether it was reasonable for the plaintiff to reject the offer after considering what the plaintiff's net recovery would have been had the offer been accepted. The trial court was not required to measure the reasonableness of Barr's decision with the benefit of hindsight after the parties completed the first phase of the trial.

Considering the trial court's broad discretion in deciding what is just and equitable, we conclude Farmers has not met its burden to demonstrate that the plaintiff unreasonably rejected Farmers' settlement offer or to demonstrate that Barr unduly prolonged the litigation. Farmers did not question its expert witness, Mr. Wilkins, on that issue. On this record, Farmers has not met its burden to demonstrate that it was Barr rather than Farmers whose litigation strategy resulted in the case going to trial.

Next, we turn to Farmers' argument that the trial court abused its discretion by not discounting a fee the trial court found reasonable and necessary because Barr didn't give it a chance to settle before the trial. Even though Farmers seems to view the case as one that was simple to evaluate, we note that it didn't make an offer for a year and half. Furthermore, the likely damage award in a personal injury automobile

20

case is sometimes difficult to predict, and several of the elements of the damages that were awarded were unliquidated damages awards.[29] Often, parties find it difficult to agree on what amount represents a figure that a jury is reasonably likely to award on an unliquidated damages element of an award in a trial.

On top of that, in its brief Farmers cites no cases holding that an insured has a duty toward the company that sells them a policy of insurance to make the company an offer to settle a first-party insurance claim. In the context of the other parts of an automobile policy, where the parties' duties have been addressed, it's "the insurer (not the insured) that has a common-law duty to settle third-party claims against its insured when it is reasonably prudent to do so."[30]

---

[29]*Reagan v. Vaughn*, 804 S.W.2d 463, 483 (Tex. 1991) (Hecht, J., concurring and dissenting opinion on motion for rehearing) ("The law recognizes that some intangible, non-economic injuries may be compensated with an award of money damages. Such injuries include physical pain, mental anguish, impairment and disfigurement resulting from personal injuries. No appraiser can testify to the value of such losses. Yet juries must do what no one else can: they must set a specific dollar figure on these intangible damages.").

[30]*In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 267 (Tex. 2021) (orig. proceeding).

Along with not citing any caselaw, Farmers doesn't point to any provisions of its policy that place a duty on their insureds to make Farmers an offer to settle a first-party insurance claim before a trial. On the other hand, under the Texas Constitution, both Barr and Farmers have a constitutional right to a trial on all disputed issues of fact.[31] The trial court rejected Farmers' argument claiming Barr had a duty to make settlement offers for less than the full limits of his UIM coverage, noting: "Parties are not required to settle a case – that is why trials happen when the parties cannot compromise." Given that Farmers cites no caselaw to support its argument and cites no provisions in its policy to claim that its insureds are under a duty to make Farmers settlement offers, we conclude that Farmers hasn't met its burden to demonstrate that the trial court violated a guiding rule or principle by not imposing on Barr a duty that Farmers has not shown is recognized either in its policy or under Texas law.

Farmers' final argument is that it's wholly "inequitable and unjust" to shift to Farmers the burden of paying the attorney's fees that Barr

---

[31]Tex. Const. art. I, § 15 ("The right of trial by jury shall remain inviolate.").

incurred after he rejected Farmers' offer. Yet when Barr rejected Farmers' offer, the value that a jury might have placed on the elements of his claims were unknown, and as we have already explained, because some of those claims were unliquidated, the parties might have found them difficult to predict.

In its appeal, Farmers didn't include the reporter's record from the jury portion of the trial with the appellate record. By providing the court with an incomplete record, we cannot second guess the trial court's decision to include the attorney's fees that Barr incurred after rejecting Farmers' offer as "a matter of fairness in light of all the circumstances." All the circumstances would include knowing what the trial court knew, and in this case the trial court had the opportunity to hear the evidence and to observe what happened in the jury phase of the trial.

For instance, perhaps the reporter's record from the first phase of the trial would offer more reasons than we have discussed to support the trial court's conclusion that the award is equitable. The party complaining the trial court abused its discretion "has the burden to bring

forth a record showing such abuse."[32] "Absent such a record, the reviewing court must presume that the evidence before the trial judge was adequate to support the decision."[33] As to Farmers' complaint that the award includes the attorney's fees for the trial, without that part of the record we must presume that the trial court had adequate evidence to justify its conclusion that it would be equitable and just to justify its award.

## Conclusion

For the reasons explained above, we overrule Famers' issue. Accordingly, the trial court's judgment is.

AFFIRMED.

HOLLIS HORTON
Justice

Submitted on March 28, 2024
Opinion Delivered May 23, 2024

Before Golemon, C.J., Horton and Johnson, JJ.

---

[32]*MSW Corpus Christi Landfill, Ltd. v. Gulley-Hurst, L.L.C.*, 664 S.W.3d 102, 109 (Tex. 2023) (cleaned up).
[33]*Id.*